877 So.2d 100 (2004)
Rose DETILLIER, Individually and on behalf of her minor children, Sally E. Detillier and Tyler M. Detillier, Cory M. Detillier, Heidi T. Detillier, Joby J. Detillier and Dain P. Detillier
v.
KENNER REGIONAL MEDICAL CENTER.
No. 2003-CC-3259.
Supreme Court of Louisiana.
July 6, 2004.
*101 Block Law Firm, Matthew Ferdinand Block, Thibodaux, for applicant.
Charles C. Foti, Jr., Attorney General, Jude David Bourque, Assistant Attorney General, for respondent.
*102 TRAYLOR, Justice.[*]
We granted this writ application to determine whether a state health care provider covered under the Malpractice Liability for State Services Act, LSA-R.S. 40:1299.39 et seq. ("MLSSA" or "Public Act"), may be named as a defendant in a medical malpractice lawsuit. After considering the language of the statute itself, and other statutes in pari materia, as well as the legislature's purpose in enacting the MLSSA, we conclude that the special substantive sui generis statutory grant to patients and their representatives of a right to recover certain losses provided in the MLSSA allows for a covered state health care provider to be named individually as a defendant in a medical malpractice lawsuit but prohibits the entry of a judgment against the covered health care provider.

FACTS AND PROCEDURAL HISTORY
Terrance Detillier, who had been previously diagnosed with congestive heart failure, died on December 13, 2000, while admitted to Kenner Regional Medical Center ("Kenner Regional") for treatment for insulin-dependent diabetes mellitus, right charcot foot and acute osteomyelitis.
Plaintiffs, the decedent's wife and children, filed complaints with the Louisiana Patients' Compensation Fund and the Division of Administration, alleging that substandard medical care rendered at Kenner Regional directly caused Mr. Detillier's death. Claimants sought review of the care rendered by Kenner Regional pursuant to LSA-R.S. 40:1299.41 et seq., which sets forth the procedure for a medical malpractice claim against a private health care provider ("Private Act"). Claimants also sought review of the care rendered by state-employed physicians Dr. Robert Dehne, Dr. Chris Ferguson, and Dr. David Borne; LSU Faculty Care Comprehensive Medicine ("LSU Faculty Care"); and the State of Louisiana, Louisiana State University Medical Center pursuant to LSA-R.S. 40:1299.39 et seq., the Public Act, which sets forth the procedure for a medical malpractice claim against a state health care provider.
After the private medical review panel reviewed the claim against Kenner Regional and issued its opinion, the plaintiffs filed suit in the 24th Judicial District Court, Parish of Jefferson, against Kenner Regional on January 13, 2000. After the state medical review panel reviewed the claim against the state health care providers and issued its opinion, plaintiffs amended their lawsuit to add as defendants Dr. Dehne, Dr. Ferguson, Dr. Borne, LSU Faculty Care and the State of Louisiana, Louisiana State University Medical Center.
Dr. Dehne, Dr. Ferguson and Dr. Borne responded to the petition by filing an exception of no cause of action, arguing that the Public Act provides the sole remedy for the medical malpractice alleged and does not recognize a cause of action against the individual state health care providers themselves. After a hearing on the exception, the trial court overruled the doctors' exception.
The court of appeal granted these defendants' writ application, vacated the judgment of the trial court, and granted the defendants' exception of no cause of action. The appellate court held that the plaintiffs' cause of action is limited by the MLSSA to a claim against the State of Louisiana and that the plaintiffs have no *103 cause of action against the covered state health care providers.[1] This Court granted the plaintiffs' writ to consider whether state health care providers may be named as individual defendants in a medical malpractice suit under the provisions of the Public Act.[2]
In this Court, plaintiffs contend there is nothing in the language of the MLSSA which would prohibit them from naming covered state health care providers as defendants in medical malpractice lawsuits and argue that failure to do so will result in confusion as to the applicable standard of care. Moreover, the plaintiffs assert that state health care providers who commit medical malpractice will be shielded from being reported to national medical malpractice data banks, in violation of public policy, if the individual state health care providers are not named as defendants in medical malpractice lawsuits. The State counters that the law clearly states that only the state may be held liable for damages or losses caused by the medical malpractice of state health care providers covered by the Public Act.

LAW
The law on statutory interpretation is well-defined. Legislation is a solemn expression of legislative will, and therefore, interpretation of a law involves primarily the search for the legislature's intent. La.Code Civ. art. 2; Lockett v. State, Dept. of Transp. and Dev., XXXX-XXXX p. 2 (La.2/25/04), 869 So.2d 87; Perritt v. Dona, 2002-2601 p. 13 (La.7/2/03), 849 So.2d 56, 65; Batson v. South Louisiana Medical Center, XXXX-XXXX, p. 9 (La.11/19/99), 750 So.2d 949, 956; Ruiz v. Oniate, 1997-2412, p. 4 (La.5/19/98), 713 So.2d 442, 443. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La.Code Civ. art. 9; Lockett, XXXX-XXXX p. 2; Perritt, 2002-2601 p. 15, 849 So.2d at 65-66; Batson, XXXX-XXXX p. 9, 750 So.2d at 956; Ruiz, 1997-2412 p. 4, 713 So.2d at 443. When the language of the law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La.Code Civ. arts. 10 and 12; Ruiz, 1997-2412 p. 4, 713 So.2d at 444; Conerly v. State, 97-0871 p. 4 (La.7/8/98), 714 So.2d 709, 710-711. Moreover, laws on the same subject matter must be interpreted in reference to each other. La.Code Civ. art. 13; Ruiz, 1997-2412 p. 5, 713 So.2d at 444; Conerly, 97-0871 p. 4, 714 So.2d at 711.
In this instance, we are asked to interpret the MLSSA, which "limits the liability of certain health care providers in derogation of the general rights of tort victims." Ruiz, 1997-2412 p. 4, 713 So.2d at 444. This Court has previously held that "if application of the foregoing rules of interpretation fails to illuminate definitively the legislature's intent, only then should the rule of strict construction apply to the interpretation of laws in derogation of common rights such as the MLSSA." Id., 1997-2412 p. 5, 713 So.2d at 445; see Batson, XXXX-XXXX p. 9, 750 So.2d at 956; Conerly, XXXX-XXXX p. 4, 714 So.2d at 711.

*104 DISCUSSION
It is not in dispute that the state-employed physicians Dr. Dehne, Dr. Ferguson and Dr. Borne are health care providers covered under the provisions of the Public Act.[3] Subsections C and D(1) of the Public Act provide as follows:
C. Since the Louisiana Civil Code was enacted only in the domain of the private law, governs only the legal relationships of private persons among themselves alone, and is inapplicable to public entities and their legal relationships, there is no right nor legal basis ex delicto, or ex quasi delicto, for an action by a patient or his representative to recover damages or any other losses, including those for the death of the patient, from the state or a state health care provider as defined in this Section as a result of malpractice in connection with state-provided or state-related health care; however, a patient, his representative properly acting for him, or his after-death representative shall have a right to recover from the state certain losses to the extent and within the limitations defined and allowed by this Section of public law due to malpractice as defined in this Section, in the circumstances and within the parameters provided by this Section, on the sole basis of this Section as a special substantive sui generis statutory grant in the domain of public law. This Section shall not be construed to limit, waive, or prohibit claims for lack of informed consent or breach of contract as defined by statutes or otherwise provided by law.
D. (1) Whenever in the same circumstances, but not more than to the same extent, that a patient would, under the private law, including the Louisiana Civil Code, which is applicable only to private persons among themselves alone, be allowed a recovery, due to malpractice, from a private person not employed by nor acting on behalf of a public entity, a patient, his representative properly acting for him, or his after-death representative shall have a right to recover, from the state, losses, including the death of said patient, but only to the degree and within the limits allowed by, and subject to the terms and conditions of, this Section of public law, when and insofar as such losses proximately result from malpractice as defined in this Section and not from victim fault, third party fault, acts of God, acts of third parties, or contributory negligence or fault and when there exist no breaches of duty by such patient or his agents or representatives with respect to the damages sued for, no assumption of risk by patient with respect thereto, nor any other circumstances which would otherwise provide a defense or a basis of nonrecovery in any action in contract or quasi-contract or in any action arising out of any offense or quasi-offense. Whenever victim fault, third party fault, acts of God, acts of third parties, contributory negligence, or contributory fault is a substantial factor in causing such losses, the amount of recovery available from the state under this Section shall be reduced by the same percentage or proportion as such losses were brought about or resulted from such victim fault, third party fault, acts of God acts of third parties, contributory negligence, or contributory fault. Otherwise *105 than as provided by this Section of public law, a patient shall not have a right to recover losses due to malpractice from the state or from a state health care provider as defined in this Section. (Emphasis added)
Although these subsections set forth that it is the state alone from whom a successful claimant may recover damages or losses for the medical malpractice of a covered state health care provider, Subsections C and D do not address against whom a medical malpractice lawsuit is to be filed.
Subsections G and K refer to "claims" lodged against the state health care provider; however, neither subsection definitively addresses the issue of naming the individual state health care provider as a defendant in a lawsuit for medical malpractice. Subsection G echoes the Legislature's intention found in Subsections C and D that a plaintiff may recover from the state alone for any acts of medical malpractice committed by a covered state health care provider:
G. Notwithstanding any other provision of the law to the contrary, the state shall pay any damages, interest, cost of investigation and defense, and any other costs in connection with any claim lodged against any state health care provider (person covered by this Part) for an alleged act of medical malpractice, resulting in the injury or death of a patient up to the limits set forth in this Part. The coverage provided herein shall apply only when the state health care provider (person covered by this Part) is acting within the terms of the definition of "state health care provider" or "person covered by this Part" as provided in Paragraph (1) of Subsection A of this Section. (Emphasis added)
Subsection K states that prescription is suspended as stated in the procedures for the state medical review panel for a health care provider "who is answerable in solido with a qualified state health care provider against whom a claim has been filed for review."
Other subsections of the Public Act, highlighted below, make clear the fact that the successful plaintiff's recovery is to be obtained from the state. Subsection A(9) defines the "right to recover losses due to malpractice" as the "substantive right ... of a patient ... to receive ... some measure of compensation in money or services or both from the state...." Subsection F(3) states that, if the total amount of recovery does not exceed $500,000, "judgment may be rendered for the total amount and paid by the state...." Subsection F(5) allows for "a claimant and the state" to enter into a court-approved settlement. Subsection F(7) states that payments for medical care and related benefits "shall be paid by the office of risk management (a state agency)...." Subsection F(12) provides that "all reasonable fees and costs of medical examinations and the costs and fees of the medical expert witnesses ... shall be paid by the office of risk management." Subsection H states that "the office of risk management may pay all defense and investigative costs, costs as established by the state medical review panel, and any other costs incurred in connection with the defense of these actions as said costs accrue." Subsection I(1) authorizes the state to appoint attorneys who will defend medical malpractice claims filed under this Part. Subsection I(2) speaks of compromises and settlements "between the state and the claimant...." Subsection J authorizes the office of risk management, along with the concurrence of state-appointed counsel, to compromise or settle any suit or claim up to $25,000. *106 Subsection L(1) states that "all future medical care and related benefits shall be paid by the office of risk management as are awarded in final judgments, settlements or compromises in accordance with this Section." This language in the Public Act clearly evinces the legislature's intent that a successful plaintiff in a medical malpractice suit is to recover damages and losses from the state alone. The state relies upon this language to maintain that, since the state must pay any recovery, only the state may be named as a defendant in a medical malpractice lawsuit. However, the language of the statute does not clearly answer whether a plaintiff may name a covered health care provider as a defendant in a medical malpractice lawsuit.[4]
Finding the language of the MLSSA ambiguous or non-existent on the point at issue, we must ascertain the legislature's intent with regard to whether the state alone, or the state and the individual state health care provider, may be named defendant in a medical malpractice lawsuit under the Public Act. As this Court stated in Lockett:
One particularly helpful guide in ascertaining the intent of the Legislature is the legislative history of the statute in question and related legislation. Theriot v. Midland Risk Ins. Co., 95-2895, p. 4 (La.5/20/97), 694 So.2d 184, 186. Moreover, the Legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law. Travelers Ins. Co. v. Joseph, 95-0200, p. 5 (La.6/30/95), 656 So.2d 1000, 1002-03. Thus, when the Legislature amends a statute that has been subject to interpretation by the courts, a court interpreting the amended statute must take into consideration the entire history of the amended statute, including its original form, the court decisions interpreting the statute in its original and amended forms, and any subsequent amendments.
Lockett, XXXX-XXXX p. 3.

Legislative History of the MLSSA and Analysis
As originally enacted, the MLSSA specified that medical malpractice lawsuits against state health care providers were to be filed against the state alone and that "the state assumed [the state health care provider's] liability and defense costs." See Sibley, 477 So.2d at 1101; see also Ruiz, 1997-2412 p. 5, 713 So.3d at 445 ("a suit for that [state health care provider's] malpractice could be instituted solely *107 against the state and defended by the state, with the state paying any damages awarded in the suit."). The enacting legislation, Acts 1976, No. 66, provided in pertinent part:
B.... Any suit arising out of any act of malpractice by a person covered by this Part shall be instituted solely against the state, defended by the state and the state shall be liable for any attorney's fees, costs, and expenses incurred and for damages awarded by a judgment of court or by compromise reached after institution of suit. (Emphasis added)
In that same year, the Public Act was amended.[5] The minutes of the legislative committee considering the amendment reflect "[t]he bill would allow joinder of person alleged to have committed malpractice as defendant, but without liability."[6] The amendment, contained in Acts 1976, No. 660, provided:
C. Notwithstanding any other provisions of the law to the contrary, any health care provider ("person" as defined herein) acting within the course and scope of his employment, health care facility staff appointment or assignment for or on behalf of the State to any health care institution whether or not he receives compensation for such services, shall not be held liable for any amount of damages in excess of 500,000 dollars plus interests and costs for any injury or death of the patient due to any alleged act of malpractice within the course and scope of such employment, staff appointment, or assignment. The State shall pay from the State Health Care Provider Fund created by Subsection A of this section any costs of legal defense and damages awarded by judgment of a court or by a compromise after institution of a suit for a medical malpractice claim or claims against such health care provider ("person" as defined herein) not to exceed 500,000 dollars plus interests and costs.
D. Any such judgment, settlement or compromise, including any costs of legal defense, rendered against any health care provider, as defined herein, shall be paid by the State of Louisiana. (Emphasis added)
Of this amendment, this Court has previously stated that "Act 660 of 1976 superseded [Act No. 66] by providing that a person providing health care on behalf of the state would not be liable for damages in excess of 500,000 dollars plus interests and costs for any injury or death of a patient due to malpractice, and that any judgment rendered against a health care provider would be paid by the state." Sibley, 477 So.2d at 1101; see Ruiz, 1997-2412 p. 5, 713 So.2d at 445 ("The amendment ... changed the provision that the malpractice suit must be instituted solely against the state and instead allowed damages to be awarded against a covered "Person," while limiting his liability to $500,000 and providing the state shall pay that judgment subject to the $500,000 limitation.").
Thus, after its first amendment, the Public Act provided that lawsuits could be filed against the individual state health care provider, that a judgment could be rendered against an individual state health care provider, and that the state would pay any judgment rendered up to $500,000, plus interest and costs.
*108 In 1977, the legislature approved an amendment to allow the state to file an incidental demand against a state health care provider or his medical malpractice insurer for reimbursement or indemnification for costs paid after a judgment in a malpractice action had become definitive. See Acts 1977, No. 744; Sibley, 477 So.2d at 1101. This provision was suspended, however, by House Concurrent Resolution No. 49. See R.S. 40:1299.39 "Historical and Statutory Notes"; Sibley, 477 So.2d at 1101. At this time, the legislature also amended Subsection (D) to provide that the state would pay any judgment "rendered against any health care provider" by legislative appropriation.
In Acts 1978, No. 611, the legislature rewrote portions of the Public Act regarding the limitation of liability and coverage, as follows:
B. Limitation of liability. Notwithstanding any other provisions of the law to the contrary, no judgment shall be rendered, and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interests and costs.
C. Coverage. Notwithstanding any other provision of the law to the contrary the state shall pay any damages, interest, cost of investigation and defense, and any other costs in connection with any claim [7] lodged against any health care provider ("person" as defined herein) for an alleged act of medical malpractice, resulting in the injury or death of a patient up to the limits set forth in this Part.... (Emphasis added)
This 1978 amendment added new subsection (D), which provided that all malpractice claims "against the state" would be submitted to and administered by the Division of Administration of the state. Subsection (D) authorized the Division of Administration to investigate each malpractice claim, assemble all relevant data and coordinate with legal counsel designated by the attorney general for the defense of such cases. The Division of Administration was given the authority to compromise and settle "any suit or claim" up to the $500,000 limit and to pay all defense and investigative costs, and any other costs incurred in connection with the defense of "these actions" as they accrued. A new subsection (G) was added which provided that "[a]ny person covered by this Part shall be considered as a named insured, and the coverage provided herein shall be primary."
Acts 1986, No. 965 added the requirement to the Public Act that all malpractice claims against state health care providers which were not compromised or settled must be reviewed by a state medical review panel, and enacted LSA-R.S. 40:1299.39.1, which set forth the procedures and requirements for state medical review panels. Together, R.S. 40:1299.39 and R.S. 40:1299.39.1 comprise the complete procedure for the review and adjudication of medical malpractice suits involving the state and state health care providers. Reading these statutes in pari materia as they existed in 1986, their language evinced the legislature's clear intention that individual state health care providers would be named as defendants in medical malpractice lawsuits.
The following emphasized language of R.S. 40:1299.39.1, as originally enacted, supports this conclusion. Subsection *109 (A)(2)(a) provided that the filing of the request for a review of a claim would suspend the time "within which suit must be instituted ... in the case of the state or persons covered by this Part." Subsection (B)(1)(a)(i) stated that "[n]o action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section." Subsection (B)(1)(b) provided that if an opinion was not rendered within a stated period of time, "suit may be instituted against the state or a person covered by this Part." Subsection (B)(3) suspended the running of prescription with respect to the state or person until a specified time. Thus, in 1986, when the legislature initially required medical malpractice claims against state health care providers to be first reviewed by state medical review panels, the legislature clearly intended that medical malpractice lawsuits would be filed against individual state health care providers covered under the Public Act.
In 1988, the Legislature added a new definition to the Public Act. Acts 1988, No. 786 added Subsection (A)(9) to R.S. 40:1299.39 which defined the "[r]ight to recover losses due to malpractice" as:
the substantive right in favor of a patient or his representative to receive, subject to the fiscal legislative discretion of appropriation, some measure of compensation in money or services or both from the state as and to the extent allowed by this Section, toward repairing any injury or losses proximately caused to him by an act of malpractice committed by a state health care provider as defined in this Section. [Emphasis added]
This addition was consistent with the other subsections of the Public Act which stated that it is the state alone from whom a successful malpractice claimant may recover damages or loss for the medical malpractice of a covered state health care provider. More important to our inquiry here, the 1988 act amended Subsections C, D and G to substantially their current forms.[8] At the same time, the act re-enacted all of the provisions of R.S. 40:1299.39.1 cited above as they were originally enacted. Thus, although the legislature rewrote the language establishing the right of recovery in Subsections C and D of R.S. 40:1299.39, with the effect that these subsections no longer described against whom lawsuits may be filed, it did not change the provisions of R.S. 40:1299.39.1 which clearly detail that lawsuits may be filed against the covered state health care providers. Later amendments to R.S. 40:1299.39.1 have not changed the cited language.[9]
Considering the legislative histories of R.S. 40:1299.39 and R.S. 40:1299.39.1, we hold that a plaintiff may name an individual state health care provider covered under the Public Act as a defendant in a medical malpractice lawsuit. The practical effect of our holding is that the plaintiff will be able to treat the covered state health care provider as a party, instead of a witness, and will enjoy the corresponding discovery and evidentiary benefits of this *110 distinction. We believe this effect comports with the legislature's intent to provide a patient/plaintiff with a special substantive sui generis statutory right to recover losses due to medical malpractice committed by a state health care provider.[10]
Providing a right to recover losses due to the medical malpractice of state health care providers is but one legislative goal of the Public Act. In addition, "the [MLSSA] was passed to insure an adequate supply of physicians and other professionals providing health care services on behalf of the state (1) by prohibiting judgments based on an act of such a person's malpractice in excess of $500,000, exclusive of medical expenses; and (2) by providing the state shall pay the judgments and costs of defense associated with such malpractice." Conerly, XXXX-XXXX p. 9, 714 So.2d at 714; Ruiz, 1997-2412 p. 7, 713 So.2d at 446-447; Sibley, 477 So.2d at 1100 and 1102.
Although we hold that a plaintiff may name as a defendant an individual state health care provider covered under the Public Act, a judgment entered against an individual state health care provider in favor of a successful medical malpractice claimant would be inharmonious with the express language of the MLSSA. If it were otherwise, state health care providers would not be protected by the very act which was specifically intended to protect them from liability from judgments. The language of the MLSSA clearly provides that it is the state alone from whom a successful claimant may recover damages or loss for the medical malpractice of a covered state health care provider. Moreover, the legislative aim of ensuring an adequately supply of state health care professionals would be frustrated if judgments were entered against state health care providers. The essence of the MLSSA is that a person qualified or covered under the Public Act is insulated from being cast in judgment. As was stated in Ruiz, "the entire purpose of the MLSSA was to entice professionals to provide health care to patients on behalf of the state by protecting them against malpractice judgments." *111 Id., 1997-2412 p. 10, 713 So.2d at 448 (emphasis added).
As was argued by the state before this Court, if judgments are entered casting both the state and the individual state health care provider as liable for damages, the covered worker would suffer real harm even though it is the state who would ultimately indemnify the state health care provider. The practical consequences of casting a state health care provider in judgment jointly with the state are succinctly described by the dissenting opinion in Landry v. Leonard J. Chabert Medical Center,[11] with regard to state-employed physicians:
To allow the physicians to be cast in judgment jointly with the State renders the protection afforded by the act to be meaningless. It is no consolation to declare that they suffer no harm because they will be indemnified by the State. The recordation of the judgment will place a judicial mortgage on all of their real property, thereby preventing a sale of the physicians' real property unless the judgment were paid out of the proceeds. They would be unable to purchase any real property, as the judgment would prevent a lender from financing the purchase. Their salaries could be garnished and their other assets seized.
Since the assets of the State are exempt from seizure, and should the State delay in satisfying the judgment for fiscal or other reasons, there would be nothing to prevent the judgment holder from proceeding to execute his judgment against all of the assets of the physicians that are not exempt from seizure.
The intent of the Act, to protect them from malpractice judgments in order to entice health care providers to work for the state, would be frustrated.
Thus, we hold that in a medical malpractice suit brought against the state and a qualified state health care provider, if the court finds the state health care provider committed medical malpractice, judgment must be entered for the successful claimant against the state alone.[12]

CONCLUSION
Considering the foregoing holdings, we reverse the court of appeal ruling which granted the defendants' exception of no cause of action and reinstate the judgment of the trial court which allows the plaintiffs to file a medical malpractice lawsuit against the individual state health care providers covered under the Public Act. We further hold that, in the event that the state health care providers are found by the court to have committed medical malpractice, any judgment in favor of the successful claimants will be entered against the State of Louisiana alone.
REVERSED; TRIAL COURT JUDGMENT REINSTATED; REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS.
*112 VICTORY, J., dissents in part and assigns reasons.
HIGHTOWER, J., ad hoc, dissents in part for the reasons expressed by VICTORY, J.
VICTORY, J., dissenting in part.
I agree with the majority's opinion insofar as it holds that the MLSSA "prohibits the entry of a judgment against the covered health care provider," but dissent from the portion of their opinion that allows a state health care provider to be named as defendant. La. R.S. 40:1299.39(C) alone provides the mechanism by which private individuals may recover from the state for medical malpractice. This subsection provides the general rule that "there is no right nor legal basis ex delicto or ex quasi delicto, for an action by a patient ... to recover damages ... from the state or state health care provider" However, it goes on to provide that "a patient ... shall have a right to recover from the state certain losses..." Thus, this section lays out the general rule that no action may be taken against either the state health care provider or the state, and then gives the right to recover from only the state in certain cases. Among the statutory authority cited in the majority opinion, this provision alone provides a cause of action for medical malpractice, and only against the state. Thus, the right to name a state health care provider in an action does not seem to logically comport with the language of the statutes.
Furthermore, in my view, the legislature, having clearly declared any right of recovery within the MLSSA to exist solely against the state, did not intend for individual public physicians to be named as defendants in such actions. As the court of appeal noted, this Court has recognized that the purpose of the malpractice statute was to "afford or enhance protection of physicians and other persons providing health care to patients on behalf of the state." Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1102 (La.1985). The approach taken by the majority seems to undermine and diminish the protections afforded by the statute in favor of those professionals who provide health care on behalf of the state.
HIGHTOWER, J., ad hoc, dissenting in part.
I concur in part and respectfully dissent in part for the reasons expressed by Justice Victory.
NOTES
[*] Retired Judge Lemmie O. Hightower, assigned as Justice ad hoc, sitting in place of Associate Justice Jeannette T. Knoll.
[1] Detillier, et al. v. Kenner Regional Medical Center, et al., 03-1042 (La.App. 5 Cir. 11/6/03) (unpublished).
[2] Detillier, et al. v. Kenner Regional Medical Center, et al., XXXX-XXXX (La.2/20/04), 866 So.2d 835.
[3] The MLSSA defines a "state health care provider" or "person covered by this Part" to mean "(i) the state ... and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity; or (ii) A person acting in a professional capacity in providing health care services, by or on behalf of the state...." LSA-R.S. 40:1299.39(A)(1)(a)(i) and (ii).
[4] The other subsections of the Public Act do not address this issue. Subsection A sets forth the definitions applicable to the Public Act. Subsection B specifies the standard of care. Subsection E sets forth the requirement that all medical malpractice claims which are not first compromised and settled must be submitted to administrative review in the form of a medical review panel in accordance with LSA-R.S. 40:1299.39.1, unless the state waives such review. Subsection E also provides requirements for medical review panel claims and complaints and gives these actions priority once they are filed in district court. Subsection F limits the liability of an alleged act of malpractice covered under the Public Act to $500,000 plus interest and costs, exclusive of future medical care and related benefits and, in Paragraphs (1)-(12), details the procedures applicable to recovery of those specific types of damage. Subsections H, I, J, and L sets forth the internal administrative management of medical malpractice claims against the state. Subsection M excludes political subdivisions from the scope of the state's liability under the Public Act. Subsection N limits the state's liability to encompass only sums arising from medical malpractice.
[5] The MLSSA has been amended many times since its enactment. Only those amendments which impact upon the question at issue herein will be discussed in this legislative history.
[6] See Minutes of House Comm. of Civil Law and Procedure, July 21, 1976, p. 4.
[7] At this time, there was no procedural mechanism for "claims" to be brought before a state medical review panel; thus, the use of the term "claim" as used here is assumed to include the filing of a lawsuit.
[8] Later amendments to Subsection C substituted "action by a patient" for "action in a patient," changed "section" to "Section," and deleted a final sentence which stated "Such right and action shall also be subject to legislative appropriation, as required by the Constitution." See Acts 1989, No. 547. Later amendment to Subsection D separated the section into subsections (1) and (2)
[9] See Acts 1991, No. 661; Acts 1992, No. 107; Acts 1997, No. 664; Acts 1999, No. 610; Acts 2003 Nos. 644, 961 and 1263.
[10] We reach our conclusion on grounds other than those urged by the plaintiffs. The plaintiffs argued that failure to name a covered state health care provider as a defendant in a medical malpractice law suit would result in confusion as to the applicable standard of care. We believe that a well-pleaded petition properly alerts the defendants as to applicable standard of care which a plaintiff claims has been breached.

The plaintiffs also asserted that state health care providers who committed medical malpractice would be shielded from being reported to national medical malpractice data banks in violation of public policy if individual state health care providers were not named as defendants in medical malpractice lawsuits. However, the provisions of 45 CFR § 60 et seq., which set forth the reporting and disclosure requirements for the National Practitioner Data Bank, show otherwise. These regulations apply to entities making payments as a result of medical malpractice actions or claims. 45 CFR § 60.2. In the case of covered state health care providers, who are "considered as a named insured" under the Public Act at R.S. 40:1299.39(K), the state pays all damages and losses as a result of their medical malpractice. Therefore, it is the state, which is the "entity ... which makes a payment ... for the benefit of a ... health care practitioner in settlement of or in satisfaction in whole or in part of a claim or a judgment against such ... health care practitioner for medical malpractice," which is required to report "the act or omission upon which the medical malpractice claim is based," and other information, to the National Practitioner Data Bank. 45 CFR § 60.7(a). Under the procedures applicable to the National Medical Malpractice Data Bank, it is the payment of a medical malpractice claim, and not whether a health care provider is a named defendant in a lawsuit or judgment, which triggers the responsibility of the entity making payment to report medical malpractice.
[11] XXXX-XXXX (La.App. 1 Cir. 5/14/03), 858 So.2d 454, 468-469, writ denied, XXXX-XXXX (La.10/17/03), 855 So.2d 761.
[12] We note that a recent amendment to LSA-R.S. 40:1299.39.1(I)(3)(b) and (4)(b) appears to be inconsistent with the legislative scheme of the MLSSA and our holding today. Acts 2003, No. 1263 amended these subsections to provide for payment by the state "or person covered by this Part" to reimburse a successful claimant for the cost of obtaining the cash or surety bond posted by the claimant for the state medical review panel. The provisions of these subsections are not directly before the Court, therefore, we decline to render an opinion as to whether they violate the statutory scheme of the MLSSA.