PATRICIA RIVET MURRAY, Judge.
 

 1 defendant, the State of Louisiana, through the Board of Supervisors of LSU, representing The Medical Center of Louisiana at New Orleans [hereinafter collectively referred to as “LSU”] appeals the trial court’s judgment awarding damages to the widow and children of Edward J. Holloway for his wrongful death. Plaintiffs filed an answer to the appeal arguing that the trial court incorrectly reduced their damages by applying one, rather than two, “caps” pursuant to La. R.S. 40:1299.39, the Malpractice Liability for State Services Act [“MLSSA”]. For the reasons that follow, we affirm.
 

 FACTS AND PROCEEDINGS BELOW
 

 Mr. Holloway, then 66 years old, was admitted to the Medical Center of Louisiana at New Orleans [“MCLNO”] on March 17, -2000, after he had come to the emergency room complaining of nausea, vomiting, lower abdominal pain and distention that had persisted for several days. Mr. Holloway had a history of chronic obstructive lung disease, alcohol abuse, and a 1989 prostatectomy and small bowel resection. At MCLNO Mr. Holloway underwent surgery to cure a [ 2twisted bowel on March 18th; three days later, on March 21st, he underwent a bowel resection because his bowel had again become obstructed. He developed pneumonia, however, and his condition continued to deteriorate such that on April 5th, a tracheotomy was performed on him, a feeding tube was inserted into his stomach, and he was transferred to a long term care facility, LifeCare. Following those procedures, Mr. Holloway developed peritonitis, and he died on April 25, 2000, due to “sepsis with shock as a consequence of abdominal wall cellulitis and pneumonia.”
 
 [1]
 

 On July 29, 2003, after a Medical Review Panel had determined that LSU had not
 
 *1224
 
 breached the applicable standard of care, Mr. Holloway’s widow and five major children filed the instant action against LSU pursuant to La. R.S. 40:1299.39 (MLSSA) in civil district court, alleging Mr. Holloway’s death was the result of medical malpractice at a state facility. A bench trial was held June 2-3, 2010. On July 30, 2010, the trial court rendered judgment in favor of the plaintiffs awarding the following:
 

 (1) $350,000 to Mr. Holloway’s widow for the loss of love, affection, companionship, service and support of her husband;
 

 (2) $250,000 to each of Mr. Holloway’s five offspring for the loss of love, affection, companionship, and mental distress suffered on account of the wrongful death of their father;
 

 (3) $76,249.49 for medical expenses and $5589.51 for funeral expenses;
 

 |3(4) Legal interest pursuant to La. R.S. 13:5112 (which provides the rate and terms of payment of legal interest awarded against the state).
 

 In accompanying written Reasons for Judgment, the trial court stated that the plaintiffs had proved by a preponderance of the evidence that the physicians and/or other healthcare personnel responsible for the care and treatment of Mr. Holloway while he was at the MCLNO had breached the applicable standard of care in two respects: (1) by prematurely removing Mr. Holloway’s nasal gastric tube within twenty-four hours after his March 18th surgery, thereby increasing the risk of aspiration of gastric contents into his lungs; and (2) by failing to properly attach to his abdominal wall the feeding tube that was inserted on April 5th following his second surgery, such that the tube became dislodged. As a result of the tube becoming dislodged, Mr. Holloway developed celluli-tis in his anterior abdominal wall. According to the trial court, this condition coupled with the spilling of gastric juices caused peritonitis, as a result of which Mr. Holloway went into septic shock and died. The trial court specifically found that the plaintiffs had carried their burden of proving that the conduct of the physicians and staff that treated Mr. Holloway at the MCLNO was beneath the standard of care and that their negligence was a direct cause of Mr. Holloway’s death. The trial court additionally found that the defendant, LSU, was responsible for the negligence of its employees under the doctrine of responde-at superior. Finally, noting the close and loving relationship Mr. Holloway had shared with his wife and children, even though they were all of the age of majority at the time of his death, the trial court |4reasoned that the amounts of general damages it awarded were supported by the record.
 

 In addition to the monetary awards made, the trial court’s judgment specified that the defendant was exempt from paying costs pursuant to La. R.S. 13:4521 (providing that the state, or any employee thereof acting within the course and scope of his employment, with certain exceptions, is not required to pay court costs in any judicial proceeding instituted by or against the state). Finally, the judgment provided that its award of damages was subject to the limitation of recovery as provided for in La. R.S. 40:1299.42.
 

 The defendant filed a Motion for New Trial on the basis that the trial court had mistakenly cited La. R.S. 40:1299.42(the medical malpractice statute governing the liability of private healthcare providers) instead of La. R.S. 40:1299.39 (MLSSA, which governs medical malpractice liability for state services) as the basis for limiting the plaintiffs’ recovery.
 
 [2]
 
 The plaintiffs
 
 *1225
 
 then filed a “Motion to Amend Judgment and Motion for New Trial for Reargument Only” arguing that the judgment should be amended to correct the mistake of citing the incorrect statute; additionally, plaintiffs contended a new trial (for reargument purposes only) should be granted on the issue of whether their recovery of damages should be limited to a single $500,000 cap under MLSSA or whether two |flsuch caps were warranted by the trial court’s finding that there were two separate acts of malpractice. These motions were heard on September 3, 2010. In open court, the trial judge indicated she was granting the defendant’s motion for new trial on the issue of the citation of the wrong statute and would amend the judgment accordingly. The trial judge also indicated that she was denying the plaintiffs’ motion for new trial requesting the application of two, instead of one, cap on the plaintiffs’ recovery under MLSSA, reasoning that she had found two acts of medical malpractice but only one injury, Mr. Holloway’s death.
 

 On September 16, 2010, the trial court issued a written judgment formally granting the defendant’s Motion for New Trial and plaintiffs’ Motion to Amend Judgment on the issue of the citation of the incorrect statute, and denying the plaintiffs’ Motion for New Trial for Reargument Only. Additionally, the court on its own motion granted a new trial for the purpose of amending the original judgment to include an award of judicial interest. That same day, the trial court issued an “Amended Judgment” that was identical to the July 30, 2010 judgment except for the substitution of La. R.S. 40:1299.39 in place of La. R.S. 40:1299.42 and the addition of an award of “legal interest pursuant to La. R.S. 13:5112.” The trial court also reissued with its Amended Judgment the identical reasons for Judgment that had accompanied its July 30th judgment.
 

 On October 11, 2010, the trial court granted LSU an order of suspensive appeal from the July 30, 2010 judgment and the September 16, 2010 amended judgment. LSU cites a single assignment of error: that the plaintiffs failed to Improve the existence of an employment/ responde-at superior relationship between LSU and the individual physicians and/or staff members upon whose negligence LSU’s liability was founded. Answering the appeal, the plaintiffs assert that the trial court erroneously applied a single medical malpractice “cap” as provided for in La. R.S. 40:1299.39.
 

 ISSUES
 

 There are only two issues on appeal:
 

 (1) Did the trial court err by casting LSU in judgment without sufficient proof that the physicians found to be negligent were employees of LSU for whose actions LSU was legally responsible?
 

 (2) Did the trial court err by failing to conclude that its factual findings in the instant case warranted the application of a double medical malpractice “cap” limiting the plaintiffs’ recovery to $1,000,000, rather than to the single $500,000 cap provided for by La. R.S. 40:1299.39(F)?
 

 We address these issues separately.
 

 DISCUSSION
 

 I. Proof of Respondeat Superior
 

 By this assignment of error, the defendant argues that the plaintiffs failed to prove that LSU is responsible under the
 
 *1226
 
 theory of respondeat superior for the negligence of the individuals that treated Mr. Holloway at MCLNO. Citing no jurisprudence but relying solely on La. R.S. 13:5108.1, the defendant argues that the plaintiffs failed to show the name of each individual whose negligent conduct 17contributed to Mr. Holloway’s death, to introduce the employment contract each individual had with LSU, and finally to prove that each individual was acting within the scope of his employment with LSU by treating Mr. Holloway.
 

 The plaintiffs point out that La. R.S. 18:5108.1, entitled “Indemnification of officers and employees of the state; civil rights; representation by attorney general” has no applicability to an action brought under MLSSA. Additionally, they argue that introduction of the individual employment contracts was not necessary in the instant case because the medical records admitted into evidence provided sufficient proof that all the doctors and staff members who cared for Mr. Holloway at the MCLNO were employed by LSU and were acting within the course and scope of their employment. Finally, the plaintiffs cite the testimony of Dr. De-Boisblanc, a former professor at LSU, who confirmed that staff surgeons at the MCLNO are employees of LSU.
 

 We note that this issue was first raised in a Motion for Involuntary Dismissal pursuant to La. C.C.P. art. 1672(B) filed by LSU after the plaintiffs had presented their evidence in the trial court.
 
 [3]
 
 At that time, the trial court reviewed the medical records to determine whether she could infer from their contents the existence of a respondeat superior relationship. Specifically noting that the admission forms and surgical consent forms for Mr. Holloway listed “LSU surgery” in the blank Isdesignated for “authorized physician,” the trial court found that the plaintiffs had established a prima facie case that the physicians and staff caring for Mr. Holloway were employees of LSU working under the control and supervision of LSU.
 

 Now considering this issue in light of the entire record, we agree with the trial court’s determination that the plaintiffs provided sufficient proof of the respondeat superior relationship between LSU and the individuals whose actions the trial court found to be beneath the standard of care. We first note that this action is governed by the MLSSA, not La. R.S. 13:5108.1, which is part of the Governmental Claims Act (La. R.S. 13:5101 through 5113). La. R.S. 13:5108.1 specifically provides for the state to indemnify and defend any covered individual against any lawsuit seeking damages for the alleged negligence or other act of the individual while he was engaged in the performance of his duties of employment with the state.
 
 [4]
 
 The defendant herein specifically relies upon the Definitions section of 13:5108.1, which states, in pertinent part:
 

 E. Definition.
 

 
 *1227
 
 As used in this Section “covered individual” includes:
 

 ⅜ ‡ ‡ ⅜ ‡
 

 (2) A physician who either contracts with or provides services on behalf of the state or any of its departments, whether compensated or not, in treating and performing evaluations of persons
 
 when such persons cause harm to third parties.
 
 For purposes of this Section, such physicians who provide services under contract shall be deemed to be employees of the contracting agency. (Emphasis added).
 

 | ^According to the defendant’s argument, this provision requires that the employment contracts of the individual physicians be introduced into evidence in order to prove LSU’s responsibility for their actions under the doctrine of respondeat superior.
 

 We find defendant’s argument to be misplaced. By its own terms, the above-cited provision does not apply to the instant situation because it is not alleged that the person who was being treated, Mr. Holloway, caused harm to any third party; rather, it is alleged that the physicians treating Mr. Holloway at MCLNO caused harm to Mr. Holloway. Moreover, in the instant situation indemnification is clearly not applicable because only the state is named as a defendant. Finally, even if any of the individual doctors had been named as a defendant, the MLSSA prohibits entry of judgment against an individual physician.
 
 Detillier v. Kenner Regional Medical Center,
 
 03-3259, pp. 15-16 (La.7/6/04), 877 So.2d 100, 110-111. In
 
 Detillier,
 
 the Louisiana Supreme Court held that although an individual health care provider may (but is not required to) be named as a defendant in an action brought under the MLSSA, any judgment obtained shall be entered against only the state entity, reasoning that: “The essence of the MLSSA is that a person qualified or covered under the Public Act is insulated from being cast in judgment.”
 
 Id.,
 
 p. 16, 877 So.2d at 111.
 

 The MLSSA’s definition of “State health care provider” or “person covered by this Part” is an extensive list, including but not limited to: the state or any of its departments; state hospitals and facilities; employees of the state acting within the | mcourse and scope of their duties in providing health care in connection with a state entity; physicians acting pursuant to a staff appointment to a state hospital or facility; residents, interns, or students supervised by such physicians; and health care providers performing voluntary professional services in a health care facility for or on behalf of the state. See La. R.S. 40:1299.39 A.
 

 Thus, in an action filed under the MLSSA, one of the facts the plaintiff must prove by a preponderance of the evidence is that the person or persons whose conduct caused the plaintiffs damages was covered under the Act. Nothing in the MLSSA, or otherwise in the law, suggests that the introduction of an employment contract is required to satisfy the plaintiffs burden of proof in this respect. Proof of a fact by either direct or circumstantial evidence is sufficient to constitute a preponderance, when considering the evidence as a whole, such proof shows that the fact is more probable than not.
 
 Joseph v. Broussard Rice Mill,
 
 00-0628, pp. 7-8 (La.10/30/00), 772 So.2d 94, 100 (citations omitted). Circumstantial evidence is evidence of facts or circumstances from which one might infer, using reason and common experience, the existence of other connected facts.
 
 Id.,
 
 p. 8, 772 So.2d at 100-101. Circumstantial evidence may be as persuasive as testimonial or direct evidence in demonstrating the existence or nonexistence of a fact at issue.
 
 Id.,
 
 p. 8, 772 So.2d at 101.
 

 
 *1228
 
 In the instant case, the medical records indicate that all the physicians who provided care to Mr. Holloway at MCLNO were staff surgeons, residents or interns working at MCLNO, a state facility run by LSU. In addition, Dr. DeBoisblanc’s | n testified as to his personal knowledge that Dr. Hunt (identified in the medical records as the staff doctor who performed Mr. Holloway’s March 18, 2000, surgery and the supervisor of Dr. Karam, the resident who gave the order to pull Mr. Holloway’s nasal gastric tube) was a staff general surgeon at MCLNO in 2000. Dr. DeBoisblanc further testified that staff surgeons at MCLNO were employees of LSU. From the totality of the evidence, the trial court made a reasonable inference that the persons whose negligence resulted in Mr. Holloway’s death were employees of LSU acting within the course and scope of their employment. We note that the defendant did not introduce any evidence to contradict the clear inference suggested by these medical records. Therefore, in the absence of any evidence to the contrary, we find no manifest error in the trial - court’s determination that the plaintiffs met them burden of proving that LSU was liable under the doctrine of respondeat superior for the negligent actions of the doctors and staff members who treated Mr. Holloway.
 

 II. Application of the MLSSA’s cap on recovery
 

 In answer to the appeal, the plaintiffs contend that the trial court erred by applying the $500,000 statutory cap to the plaintiffs’ award of damages as provided for by the MLSSA. As noted previously, the MLSSA provides that “no judgment shall be rendered ... for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars.... ” La. R.S. 40:1299.39(F). The | ^.plaintiffs’ contention that the trial court should have applied two caps instead of the one provided for in the statute is based upon a jurisprudential exception first recognized in
 
 Batson v. South Louisiana Medical Center,
 
 wherein the Louisiana Supreme Court held that under certain circumstances, more than one cap can be awarded injuries to a single person, stating: “We find that the MLSSA does not prohibit multiple statutory caps for multiple acts of negligence which produce separate and independent damages.”
 
 Batson v. South Louisiana Medical Center,
 
 99-0232 (La.11/19/99), 750 So.2d 949, 957.
 

 In the instant case, it is indisputable that the trial court found there were two separate acts of malpractice — the premature removal of the nasal gastric tube and the failure to properly attach the feeding tube to the abdominal wall — that contributed to Mr. Holloway’s death. However, the trial court also found that there was only one injury, stating at the hearing on the plaintiffs’ motion for new trial: “My intent was that there was only one injury, the ultimate death of Mr. Holloway.” This fact distinguishes the instant case from
 
 Batson,
 
 in which the trial court determined that the plaintiff had suffered three separate injuries as a result of three separate and unrelated acts of malpractice committed by separate caregivers, to wit: (1) The failure of treating surgeons to administer antibiotics, which resulted in sepsis; (2) The negligence of treating orthopedists and physical therapists, which resulted in severe flexion contractures (body curled in a fetal position); and (3) the failure of ICU physicians and nursing staff to frequently re-position the patient, which resulted in severe decubitus ulcers (bed sores). See 99-0232, pp. 2-5, 750 | i3So.2d at 951-953. The trial court found the state healthcare providers to be 100%
 
 *1229
 
 at fault in causing Ms. Batson’s sepsis, which had resulted in a permanent hearing loss, a cognitive brain deficit, and incontinence; 60% at fault in causing Ms. Bat-son’s flexion contractures, which had resulted in her inability to completely straighten her body; and 70% at fault in causing Ms. Batson’s bed sores, which had resulted in permanent scarring.
 
 Id.,
 
 p. 4, 750 So.2d at 953. The trial court in
 
 Bat-son
 
 awarded separate amounts of damages for each of these three injuries. The Louisiana Supreme Court found no manifest error in these factual findings of the trial court, and held that under such circumstances, the application of three separate caps was permissible under MLSSA.
 

 In the instant case, the plaintiffs argue that the two acts of negligence resulted in two different injuries to Mr. Holloway; they contend that the premature removal of the nasal gastric tube caused him to aspirate stomach contents into his lungs, which resulted in pneumonia, and that the subsequent failure to secure his feeding tube caused the tube to become dislodged, which resulted in sepsis. To accept this argument, we would have to find that the trial court committed manifest error by determining that the plaintiffs herein suffered only one injury: Mr. Holloway’s death. However, we find no manifest error based on this record.
 

 Although the plaintiffs contend that the pneumonia and sepsis constitute two separately compensable injuries,
 
 [5]
 
 they failed to introduce any evidence to show that Mr. Holloway suffered damages specifically attributable to the pneumonia |14other than that it further weakened Mr. Holloway’s condition such that he eventually required a tracheotomy and a feeding tube, became ventilator dependent, and was ultimately too immune deficient to recover from the sepsis. One of the plaintiffs’ experts, Dr. Repsher, opined that but for the pneumonia, Mr. Holloway would not have needed the feeding tube or the tracheotomy; he also testified that the pneumonia “may well have contributed” to Mr. Holloway’s death. The plaintiffs other expert, Dr. Balliro, opined that the aspiration pneumonia was a component of Mr. Holloway’s death, but that the relative contribution of the pneumonia as opposed to the abdominal wall cellulitis/ peritonitis was arguable. He further testified that before the nasal gastric tube was pulled and Mr. Holloway aspirated, Mr. Holloway probably would have survived; that the aspiration pneumonia made it more likely than not that he would die; and that after the gastric tube became dislodged, Mr. Holloway had no chance of surviving. Both of the plaintiffs’ experts believed that the main cause of death was the peritonitis and resulting sepsis.
 

 Despite having sought damages for Mr. Holloway’s “conscious pain and suffering” in their petition, the plaintiffs introduced no evidence regarding his pain and suffering; nor did they appeal the trial court’s failure to award any such survival damages. With regard to medical expenses, the only evidence introduced was the invoice for Mr. Holloway’s treatment at Life-Care, a private facility. The trial court’s award of $76,249.49 in medical expenses exactly matches the amount of total “payments” shown on the LifeCare bill. The only other evidence |, ¡¡regarding damages is the testimony of Mr. Holloway’s wife and five children as to the grief, suffering and deprivation each of them experienced as a result of Mr. Holloway’s death. Al
 
 *1230
 
 though the plaintiffs’ contend that the trial court erred by failing to apportion the damages between two injuries, the pneumonia and the peritonitis/ sepsis, the record is devoid of evidence upon which the court could have based such an apportionment.
 

 Because the trial judge found that the two separate acts of negligence combined to cause one injury, she awarded only a lump sum for medical expenses, and separate amounts of general damages to each individual plaintiff for his or her loss of companionship, society and suffering on account of Mr. Holloway’s death. Reviewing this record, we cannot say that the trial court’s determination that Mr. Holloway suffered only one injury is unreasonable in light of the totality of the evidence. It was the plaintiffs’ burden to prove that the defendant’s separate acts of negligence resulted in two separately compensable injuries with separate damages in order to trigger the application of two caps under the
 
 Batson
 
 exception to the MLSSA. The trial court obviously concluded that the plaintiffs failed to meet that burden in the instant case. We find no manifest error in the trial court’s conclusion.
 

 Accordingly, we hold that the trial court did not err by limiting the plaintiffs’ recovery to a single $500,000 cap under the MLSSA.
 

 ^CONCLUSION
 

 For the reasons stated, we affirm the judgment of the trial court.
 

 AFFIRMED
 

 [1]
 

 . This is the cause of death as listed on Mr. Holloway’s death certificate.
 

 [2]
 

 . La. R.S. 40:1299.39 provides in pertinent part:
 

 
 *1225
 
 Notwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an
 

 alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars.
 

 [3]
 

 . La. C.C.P. art. 1672 provides, in pertinent part:
 

 B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
 

 [4]
 

 . At the time of Mr. Holloway's death, the Governmental Claims Act expressly excluded MLSSA claims by providing, in pertinent part: "Nothing in this Part shall apply to claims covered by R.S. 40:1299.39.” This sentence was deleted from La. R.S. 13:5101 B by La. Acts 2010, No. 301, § 1.
 

 [5]
 

 . In their initial petition, the plaintiffs claimed Mr. Holloway’s death was the result of the failure to properly seal the feeding tube by attaching it to the abdominal wall. In a subsequent supplemental and amending petition filed by leave of court, the plaintiffs added an allegation that the nasal gastric tube had been prematurely removed.