714 So.2d 709 (1998)
Timothy CONERLY, et al.
v.
STATE of Louisiana, et al.
No. 97-C-0871.
Supreme Court of Louisiana.
July 8, 1998.
Gordon L. James, Hudson, Potts & Bernstein, Monroe, John Elliott Baker, Baton Rouge, Charles T. Williams, Jr., New Orleans, Blue Williams, Metairie, for Applicant.
Allan L. Placke, Johnson & Placke, West Monroe, for Respondent.
KIMBALL, Justice.[*]
We granted the State's writ solely to address the legal question of whether multiple $500,000 caps are allowed under La. R.S. 40:1299.39 for wrongful death and survival action claims arising in the context of a medical malpractice action. After considering the language of the statute, the legislature's purpose in enacting the Malpractice Liability for State Services Act, and the history of La. R.S. 40:1299.39, we conclude La. R.S. 40:1299.39 does not allow separate caps for wrongful death and survival action claims.

FACTS AND PROCEDURAL HISTORY
In this medical malpractice action, plaintiffs, Timothy Conerly and Claudia Conerly, seek damages for injuries, including severe brain damage and kidney failure, sustained by their infant daughter during and immediately prior to her birth on January 23, 1985, at E.A. Conway Hospital, a hospital owned and operated by the state. These injuries resulted in the child's death the day before her fifth birthday, and the petition was amended to allege a survival action and add wrongful death claims by her parents.
Subsequent to a bench trial, the trial court held the negligence of the hospital's employees was a substantial factor in causing the child's catastrophic injuries. In a second phase of the trial, the court held La. R.S. 40:1299.39 was constitutional and its limitation of liability provision applied to the claims presented in this case. Although believing the total amount of all general damages *710 would be capped at $500,000, the court awarded damages to plaintiffs in the following amounts for purposes of appellate review: for the survival action of the child, $2,500,000; for wrongful death, pain and suffering, loss of companionship and consortium of Mrs. Conerly, $400,000; and for wrongful death, pain and suffering, loss of companionship and consortium of Mr. Conerly, $100,000.[1] Pursuant to the statutory cap for medical malpractice damages found in La. R.S. 40:1299.39, the trial court proportionately reduced the total amount of these damages to $500,000.
On appeal, the second circuit affirmed the trial court's judgment on the issues of negligence, causation, and assessment of damages, but found that the cap applicable to the survival claim should be separate from the parents' wrongful death claims. Conerly v. State, 29,236 (La.App. 2 Cir. 3/3/97), 690 So.2d 980. Thus, plaintiffs were awarded $500,000 for the survival action, $400,000 for Mrs. Conerly's wrongful death claim, and $100,000 for Mr. Conerly's wrongful death claim.
Both plaintiffs and defendants appealed the second circuit's decision to this court. Plaintiffs' application for writ of certiorari was denied. 97-0804 (La.3/13/98), 712 So.2d 864. Defendants' application for writ of certiorari was granted solely for the purpose of addressing the legal issue of whether multiple medical malpractice caps are allowed under La. R.S. 40:1299.39 for wrongful death and survival action claims. 97-0871 (La.3/13/98), 712 So.2d 859.[2] With respect to this issue, defendants argue the limitation of liability provided in the Malpractice Liability for State Services Act (MLSSA) clearly limits the recovery of damages in survival and wrongful death actions based on the malpractice of state physicians or other health care personnel to $500,000 plus medical expenses, interest and costs. Alternatively, the State argues that even if the statute is ambiguous, when it is considered with the intent of the Act as a whole and with similar limitations of liability, the correct interpretation of La. R.S. 40:1299.39 is that the recovery of all plaintiffs in this case must be limited to the extent of a single cap.

LAW
Wrongful death actions, as well as survival actions, are governed and procedurally controlled by the provisions of the MLSSA. See Taylor v. Giddens, 618 So.2d 834, 841 (La.1993) (holding similarly with respect to the Medical Malpractice Act applicable to private health care providers). This court has noted that because the MLSSA limits the liability of certain health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage. Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442; Kelty v. Brumfield, 93-1142, p. 9 (La.2/25/94), 633 So.2d 1210, 1216; Hutchinson v. Patel, 93-2156, p. 5 (La.5/23/94), 637 So.2d 415, 420 (holding similarly with respect to the private medical malpractice provisions). See also Branch v. Willis-Knighton Med. Ctr., 92-3086, p. 14 (La.4/28/94), 636 So.2d 211, 217; Rodriguez v. Louisiana Med. Mut. Ins. Co., 618 So.2d 390, 394 (La.1993); Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003, 1005 (La.1992); Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992). On the other hand, legislation is a solemn expression of legislative will, and therefore, interpretation of a law involves primarily the search for the legislature's intent. La. C.C. art. 1; Ruiz, 97-2412 at p. 4, 713 So.2d at 444; Hutchinson, 93-2156 at p. 5, 637 So.2d at 420; Touchard v. Williams, 617 So.2d 885, 888 (La.1993); Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La. 1989); Keelen v. State, Dept. of Culture, Recreation, and Tourism, 463 So.2d 1287, 1289 (La.1985). Hence, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; Ruiz, 97-2412 *711 at p. 4, 713 So.2d at 444; Hutchinson, 93-2156 at p. 5, 637 So.2d at 420. When the language of the law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. arts. 10 and 12; Ruiz, 97-2412 at p. 4, 713 So.2d at 444; Hutchinson, 93-2156 at p. 5, 637 So.2d at 420. Additionally, laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13; Ruiz, 97-2412 at p. 5, 713 So.2d at 445; Hutchinson, 93-2156 at p. 6, 637 So.2d at 420. If application of the foregoing rules of interpretation fails to illuminate definitively the legislature's intent, only then should the rule of strict construction apply to the interpretation of laws in derogation of common rights such as the MLSSA. Ruiz, 97-2412 at p. 5, 713 So.2d at 445. See also Hutchinson, 93-2156 at p. 6, 637 So.2d at 421.

DISCUSSION
Because wrongful death actions are governed by the provisions of the MLSSA, the language relevant to the issue presented in this case is as follows:
B. Limitation of liability. Notwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars....
C. Coverage. Notwithstanding any other provision of the law to the contrary, the state shall pay any damages, interest, cost of investigation and defense, and any other costs in connection with any claim lodged against any health care provider ("person" as defined herein) for an alleged act of medical malpractice, resulting in the injury or death of a patient up to the limits set forth in this Part. ...[3]
La. R.S. 40:1299.39(B) and (C) (emphasis added).
The repeated use of the word "any" in the limitation of liability and coverage sections render these provisions susceptible of several meanings. By definition, "any" can mean one, some or all indiscriminately, one or more, all, or unlimited in amount, number, or extent. Webster's Ninth New Collegiate Dictionary 93 (1991). As a result, the pertinent phrases can be read as providing a single cap for each individual action which arises from an act of medical malpractice (i.e. one for the survival action and one for the wrongful death action, or even one for each wrongful death action brought by each claimant) or as providing a single cap for all actions which arise from an act of medical malpractice (i.e. one cap for both the survival and wrongful death actions). For example, Section B can be read as "no judgment shall be rendered for the injury or death of any patient in any one action or claim for an alleged act of malpractice in excess of $500,000," or "no judgment shall be rendered for the injury or death of any patient in all actions or claims for an alleged act of malpractice in excess of $500,000." Similarly, *712 Section C can be read as providing that the state shall pay any damages in connection with any one individual claim for an act of medical malpractice up to the $500,000 limit, or that the state shall pay any damages in connection with any and all claims for an act of medical malpractice up to the $500,000 limit. The language of the statute is ambiguous; therefore, we must endeavor to ascertain the legislature's intent and purpose in enacting the MLSSA.
The MLSSA was enacted by Act No. 66 of 1976 to provide that the state would pay any damages awarded in a medical malpractice suit instituted against certain state-employed health care providers. It was not until Act No. 660 of 1976, however, that liability of a covered "person" was limited to $500,000 such that the state was required to pay a judgment rendered against the covered "person" subject to the $500,000 limitation. The original limitation of liability section as enacted in Act No. 660 of 1976 read:
C. Notwithstanding any other provisions of the law to the contrary, any health care provider ("person" as defined herein) acting within the course and scope of his employment, health care facility staff appointment or assignment for or on behalf of the State to any health care institution whether or not he receives compensation for such services, shall not be held liable for any amount of damages in excess of 500,000 dollars plus interests and costs for any injury or death of the patient due to any alleged act of malpractice within the course and scope of such employment, staff appointment, or assignment. The State shall pay from the State Health Care Provider Fund created by Subsection A of this section any costs of legal defense and damages awarded by judgment of a court or by a compromise after institution of a suit for a medical malpractice claim or claims against such health care provider ("person" as defined herein) not to exceed 500,000 dollars plus interests and costs.
La. R.S. 40:1299.39(C) (1976) (emphasis added). Thus, as originally enacted, the statute stated a health care provider shall not be held liable for any amount of damages in excess of $500,000 for the injury or death of the patient due to any alleged act of malpractice. It further provided that the state would pay any damages awarded against such health care provider after institution of a suit for medical malpractice claim or claims up to $500,000. Under these provisions, a health care provider could not be held liable for any damages over $500,000 caused by his malpractice.
The relevant language was changed in Act No. 611 of 1978. The stated purpose of this Act, as indicated in its title, was, among other things, to provide for the inclusion of a limitation of liability "per act." The minutes of the meeting in which the bill which became this Act was discussed indicate the bill was perceived as "limit[ing] liability per act of malpractice." House Committee on Civil Law and Procedure, Minutes, June 12, 1978, p. 2. It appears that with Act 611 of 1978, the legislature intended to insure that the limitation of liability (the $500,000 cap) apply "per act" of malpractice as opposed to "per injury," "per claim," or "per claimant." The new language read as follows:
B. Limitation of liability. Notwithstanding any other provisions of the law to the contrary, no judgment shall be rendered, and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interests and costs.
C. Coverage. Notwithstanding any other provision of the law to the contrary, the state shall pay any damages, interest, cost of investigation and defense, and any other costs in connection with any claim lodged against any health care provider ("person" as defined herein) for an alleged act of medical malpractice, resulting in the injury or death of a patient up to the limits set forth in this Part....
Act No. 239 of 1985 made negligible changes to the above-quoted portions of section (B) of La. R.S. 40:1299.39. Additionally, it amended the limitation of liability section to provide that the limitation shall not apply to future medical care and related benefits and specified the procedures applicable to *713 claims which included future medical care and related benefits.[4]
In 1988, Act No. 786 made several changes to La. R.S. 40:1299.39 which are not relevant to this opinion. The pertinent provisions, however, remained essentially the same and read:
F. Limitation of liability. Notwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interests and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars....
G. Coverage. Notwithstanding any other provision of the law to the contrary, the state shall pay any damages, interest, cost of investigation and defense, and any other costs in connection with any claim lodged against any state health care provider (person covered by this Part) for an alleged act of medical malpractice, resulting in the injury or death of a patient up to the limits set forth in this Part....
Additionally, the 1988 amendments added a section which clarified the legislature's intent that a claimant suing under the MLSSA recover only "not more than" to the same extent as one suing under the private law. This section states in part:
D. Whenever in the same circumstances, but not more than to the same extent, that a patient would, under the private law, including the Louisiana Civil Code, which is applicable only to private persons among themselves alone, be allowed a recovery, due to malpractice, from a private person not employed by nor acting on behalf of a public entity, a patient, his representative properly acting for him, or his after-death representative shall have a right to recover, from the state, losses, including the death of said patient, but only to the degree and within the limits allowed by, and subject to the terms and conditions of, this Section of public law....
Thus, according to this section, it was the legislature's intent that a claimant suing under the MLSSA should not recover more than a claimant suing under the private act when the same circumstances are presented. The Medical Malpractice Act (MMA) provides that the "total amount recoverable" for "all malpractice claims" for injuries to or death of a patient, exclusive of future medical care and related benefits, shall not exceed $500,000 plus interest and cost. La. R.S. 40:1299.42(B)(1). This provision has been interpreted by Louisiana appellate courts and one federal district court to limit all claims, including those for survival action and wrongful death, by all plaintiffs to $500,000. Todd v. Sauls, 94-10 (La.App. 3 Cir. 12/21/94), 647 So.2d 1366 (holding a single $500,000 cap applies to all malpractice claims flowing from victim's death, regardless of the number of plaintiffs); Moody v. United Nat'l Ins. Co., 95-1 (La.App. 5 Cir. 5/10/95), 657 So.2d 236 (rejecting plaintiffs' claim that each plaintiff is entitled to an individual liability cap for the wrong experienced as a result of the malpractice); Johns v. U.S., 1998 WL 151282 (E.D.La.1998) (holding a single medical malpractice cap applied where wrongful death and survival action damages were sought). Both parties acknowledged that the existing jurisprudence seems to uniformly hold there is but one cap allowed under the MMA.[5] We express no opinion on whether *714 these courts' and the parties' interpretation of the MMA is correct, however, and merely note that La. R.S. 40:1299.39(D) provides that a party be able to recover under the "public act" "not more than to the same extent" that he would be able to recover under the private act.
The Digest of Act No. 786 of 1988 submitted with the proposed bill described the "present law," i.e. the law as amended in 1985 and applicable to this case, as providing for a maximum recoverable amount of $500,000 for injury or death of a patient plus interest and costs. The Digest also noted that the "proposed law" contained in the 1988 Act was intended to "clarify" that the $500,000 limitation of liability included the claims of all parties who are damaged by the act of malpractice and specifically referred to loss of services, love and affection, wages, and pain and suffering as being covered under one cap. Although the Digest does not form part of the law, it was presented together with the proposed legislation and serves to elucidate the understanding and intent of the legislators which appears to be that the total amount recoverable from the state by all damaged parties on account of an act of malpractice is $500,000 for the injury of death of a patient.
In addition to the above legislative history of the statute, we note the purpose of the MLSSA is two-fold. Primarily, the Act was passed to insure an adequate supply of physicians and other professionals providing health care services on behalf of the state (1) by prohibiting judgments based on an act of such a person's malpractice in excess of $500,000, exclusive of medical expenses; and (2) by providing the state shall pay the judgments and costs of defense associated with such malpractice. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1100 (La.1985) (on rehearing). Secondly, the Act was intended to protect the public fisc by limiting the potential liability of the state for malpractice committed by a covered "person" to $500,000. See, e.g., Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874, 878 (La.1993) (stating the legislative goal prompting the enactment of La. R.S. 13:5106(B)(1), a statute which imposed a $500,000 ceiling on general damages recoverable in a personal injury suit against the state, its agencies or its subdivisions, was to protect the public fisc).[6] Obviously, allowing two caps in the instant case would not protect the public fisc as sufficiently as a single cap would. As we stated in Sibley, the statute in effect limits the state's vicarious liability because it prohibits "any judgment whatsoever " based on the malpractice of covered health care providers in excess of the statutory limitation. Sibley, 477 So.2d at 1104 (emphasis added).
Given the above discussion of the legislative history and purpose of the relevant statutory provisions, we find the legislature intended only one cap for both survival action and wrongful death claims.
We therefore hold that when there is an act of malpractice causing the death of a patient, and plaintiffs bring survival action and wrongful death claims, La. R.S. 40:1299.39 provides there is but one $500,000 cap applicable to all claims. The court of appeal's holding that the cap applicable to the survival claim is separate from the parents' wrongful death claims is reversed, and the trial court's judgment capping plaintiffs' *715 recoverable damages at $500,000 is reinstated.[7]
REVERSED AND RENDERED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Judge, concurring.
In this case there was only one patient who was injured by the malpracticethe child. The survival action seeks recovery of the child's damages for his injury, and the wrongful death action seeks damages for the parents because of the injury to the child. The single limitation of $500,000 should apply.[1]
NOTES
[*] JOHNSON, J., not on panel. See Rule IV, Part 2, Section 3.
[1] Additionally, the court awarded special damages in the sum of $41,833.75 to Mrs. Conerly as damages for the custodial care she provided during her child's lifetime.
[2] Specifically, the limited grant of certiorari stated, "Granted (See order attached). Argument limited to issue of multiple caps in medical malpractice case (Assignment of Error No. 1)."
[3] This quotation reflects the language of the statute as it appeared in January of 1985, the time the malpractice occurred. Neither party appears to argue to this court that any other version of the statute is applicable. In any case, it makes no difference whether we apply the relevant sections as they appeared in 1985 or in 1990, when the death occurred, because both versions are essentially the same. At the time of the child's death in 1990, the relevant portions appeared as follows:

F. Notwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars....
G. Notwithstanding any other provision of the law to the contrary, the state shall pay any damages, interest, cost of investigation and defense, and any other costs in connection with any claim lodged against any state health care provider (person covered by this Part) for an alleged act of medical malpractice, resulting in the injury or death of a patient up to the limits set forth in this Part....
[4] Although this Act was not effective until September 6, 1985, Section 2 stated, "The provisions of this Act shall apply to pending litigation and pending claims made pursuant to R.S. 40:1299.39." Because plaintiffs had a pending claim from the moment the malpractice occurred in January, 1985, and it was still pending on September 6, 1985, we include the amendments made by this Act in the applicable version of the statute quoted earlier in this opinion.
[5] See Original Brief on Behalf of the Plaintiffs, p. 4 ("the public act clearly does not limit "all malpractice claims" to the "total amount" of $500,000 as does the private act but simply limits each individual claim to a cap of $500,000."); Original Brief on Behalf of the State of Louisiana Through the Department of Health and Human Resources, E.A. Conway Memorial Hospital, et al., p. 17 ("On the other hand, had this judgment been entered pursuant to the Louisiana Medical Malpractice Act against private health care providers, the judgment would have been limited to $500,000.00 plus interest plus medical expenses. Louisiana jurisprudence is clear that the limitation of liability provided at the Louisiana Medical Malpractice Act, at La. R.S. 40:1299.42(B), limits the total amount recoverable for all claims for injuries to or death of a patient to $500,000 plus future medical expenses and interest." (citations omitted)).
[6] Chamberlain declared the $500,000 cap on general damages unconstitutional. Subsequent to this decision, the Louisiana Constitution was amended to provide that the legislature may limit the liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. La. Const. art. 12, sec. 10. Consequently, La. R.S. 13:5106(B)(1) was amended and reenacted to provide for a $500,000 cap on general damages recoverable against the state, state agency or political subdivision. This history notwithstanding, Chamberlain's enunciation of the legislature's intent in authorizing such a cap, which cap is analogous to the $500,000 cap provided for in the MLSSA, continues to be valid as it is an interpretation of La. R.S. 13:5106(E) which has not been changed.
[7] We note the trial court proportionately reduced the damages so that the total sum of the damages for any amount of damages plaintiffs are allowed to recover does not exceed the sum of $500,000 exclusive of interest, costs and the award for custodial care provided by Claudia Conerly. The issue presented in this case is limited to the number of applicable caps and the parties have not argued or briefed to this court any alternative means of allocating the $500,000, therefore we have simply reinstated the trial court's proportional reduction without addressing such allocation.
[1] I persist in the belief that the limitation constitutes a denial of equal protection of the laws. See Butler v. Flint Goodrich Hosp. Of Dillard Univ., 607 So.2d 517 (La.1992)(Lemmon, J., dissenting), cert. denied, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993).