KUHN, J.
| gPlaintiff-appellant, Lance P. Lemoine, appeals the trial court’s declaratory judgment, granting a motion for summary judgment filed by defendants-appellees, Baton Rouge Physical Therapy, LLP (BRPT) and BRPT-Lake Rehabilitation Centers, LLC (BRPT-Lake), declaring valid provisions in a partnership agreement, which expressly preclude Lemoine from engaging in his profession providing rehabilitative services and from competing through employment with a competitor for a period of two years in specified parishes; sustaining a peremptory exception objecting on the basis of Lemoine’s failure to state a cause of action on his claim for damages as a result of alleged unfair trade practices by BRPT; and finding moot a dilatory exception raising the objection of prematurity. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Lemoine is a physical therapist who worked for BRPT for more than 25 years. In 1993, Lemoine became a partner and entered into a partnership agreement with BRPT. As a partner of BRPT, Lemoine was an employee of BRPT-Lake. In January 2012, Lemoine and BRPT ended their relationship.
On June 8, 2012, Lemoine filed this lawsuit for declaratory relief, naming BRPT and BRPT-Lake as defendants. Attached to the petition is a copy of the partnership agreement entered into by the parties on January 1, 2005,[1] as well as an operating agreement between BRPT and BRPT-Lake.[2]
*773 According to Lemoine’s allegations, non-competition provisions contained in the partnership agreement were unenforceable and, hence, he sought a | .¡declaration that he may provide outpatient or alternatively home health physical therapy and/or inpatient services at any location he determines.[3] He also claims entitlement to damages, alleging that by its attempts to enforce an invalid and overbroad agreement precluding him from exercising his lawful profession, BRPT had violated the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA).[4]
BRPT filed both a peremptory exception raising the objection of no cause of action and, in the alternative, a dilatory exception objecting on the basis of prematurity directed at the LUTPA claim. BRPT-Lake answered the lawsuit. The parties subsequently filed cross motions for summary judgment, averring that as a matter of law each was entitled to relief.
A hearing was held on the exceptions and the cross motions for summary judgment. The trial court denied Lemoine’s motion and granted the joint cross motion of BRPT and BRPT-Lake. A judgment issued which specifically found that the non-competition provisions were valid, and that Lemoine was, therefore, precluded from providing rehabilitative services, as defined in the partnership agreement, or engaging in a similar business in the parishes of East Baton Rouge, Ascension, and Livingston for period of two years from the date of termination of his interest in BRPT. In the judgment, the trial court sustained BRPT’s exception of no cause of action and denied as moot the exception of prematurity as to Lemoine’s LUTPA claim. Lemoine appeals.
DISCUSSION
|4La. C.C.P. art. 1871 authorizes the judicial declaration of “rights, status, and other legal relations whether or not further relief is or could be claimed.” A declaratory judgment is one which simply establishes the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done, and its distinctive characteristic is that the declaration stands by itself with no executory process following as a matter of course, so that it is distinguished from a direct action in that it does not seek execution or performance from the defendant or the opposing litigants. Appellate courts review a trial court’s decision to grant or deny a declaratory judgment using the abuse of discretion standard. Olde Nawlins Cookery, L.L.C. v. Edwards, 2009-1189 (La.App. 1st Cir.5/3/10), 38 So.3d 1012, 1015.
Louisiana has historically had a strong public policy against any employment contract that prohibits an employee from competing with a former employer. See Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373, 1379. This policy of restricting non-competition agreements was based on an underlying desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. See McAlpine v. McAlpine, 94-1594 (La.9/5/96), 679 So.2d 85, 91. Thus, because such agreements were considered to have been in derogation of the *774 common right, they were strictly construed against the party seeking their enforcement. See SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La.6/29/01), 808 So.2d 294, 298.
In SWAT 2Jh the Louisiana Supreme Court examined the provisions of La. R.S. 23:921, which at the time provided in relevant part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void....
|SC. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
The SWAT 21 court held that the legislature intended a non-competition agreement restraining an employee from carrying on or engaging in his own business might be valid, provided certain conditions were met; but that conversely, an agreement that restrained an employee from carrying on or engaging in a competing business as the employee of another would not fall within the exception set forth in that subsection and, instead, would be null and void pursuant to Subsection A. 808 So.2d at 306-07.
Without modifying the provisions of Subsection C, by 2003 La. Acts, No. 428, § 1, the legislature added Subsection D to La. R.S. 23:921.[5] That subsection states in pertinent part:
For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
Thus, the SWAT 24 court’s holding was legislatively overruled. See Green Clinic, L.L.C. v. Finley, 45,141 (La.App.2d Cir.1/27/10), 30 So.3d 1094, 1098.
By 2010 La. Acts, No. 164, § 1, La. R.S. 23:921A(1) was amended to add a second sentence. The State’s present policy is set forth in La. R.S. 23:921, which states:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision | ^thereof, which meets the exceptions as provided in this Section, shall be enforceable.
Over the years, a number of exceptions to La. R.S. 23:921A(1) have been enacted in other subsections of the statute. Today exceptions exist for employer/employee relationships, corporation/shareholder relationships, partnership/partner relationships, and franchise/franchisee relationships. The statute defines the situations under which a non-competition clause may be valid in the context of each of these *775 relationships. Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 2000-1954 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 410, writs denied, 2001-3816 and 3355 (La.3/8/02), 811 So.2d 883 and 886. Considering the legislative history of the statute, it is apparent the legislature has relaxed the overly restrictive interpretation the courts have given to noncompetition agreements. See SWAT £4, 808 So.2d at 312-15 (Traylor, J., dissenting).
Section 9E of the partnership agreement sets forth the non-competition provisions, stating in part:
Each of the parties hereto, as Partners, as well as any others who become members of this Partnership ..., agree that in the event that any Partner’s interest in the Partnership is terminated for any reason, with or without cause, the terminating Partner shall not, for a period of two ... years after such termination, directly or indirectly, in the Parishes of East Baton Rouge, Ascension, and Livingston, Louisiana (1) engage in the business of Rehabilitative Services (the “business”) as a partner, owner, member, consultant, contractor or employee of any entity that engages in such business, or (2) solicit or undertake to do such business, with any patient, customer or facility, with which the Partnership or BRPT-Lake is doing such business at the time of his termination or with which the Partnership or BRPT-Lake has done such business during the two ... years preceding his termination.
Thus, as a terminating partner, Lemoine contractually agreed that for a period of two years after his termination, he would not directly or indirectly engage in the business of rehabilitative services as either an employee of or through an equity 17interest in any entity that engages in rehabilitative services within the specified parishes.
By his participation in the partnership agreement, in Section 3, Lemoine as a partner expressly agreed that the business of BRPT was “the ownership of a 67% membership interest in [BRPT-Lake],” and additionally that BRPT may, among other things:
engage in physical therapy, occupational therapy, biofeedback therapy, athletic training and other rehabilitation services including the treatment of persons by the use of thermotherapy, actinotherapy, hydrotherapy, electrotherapy, massage, therapeutic exercises, electromyography, and other physical therapy, occupational therapy, biofeedback therapy, athletic training and other rehabilitative procedures, for the purpose of providing therapy, health, well-being, fitness, and excellence, including any and all activities and undertakings which can be carried on to accomplish these objectives (collectively, “Rehabilitation Services”).
In Section 4, Lemoine also agreed as a partner that he:
shall devote his entire time and attention to Rehabilitation Services as an employee of BRPT-Lake, except that he shall be free to engage in other activities provided that, unless approved by the Partners, such activities are not in the field of Rehabilitation Services or in competition with or conflict with the business of BRPT-Lake. (Emphasis added.)
Therefore, by the contractual provisions to which Lemoine agreed to bind himself, a partner of BRPT is contractually defined as “an employee of BRPT-Lake.”
Lemoine requested a declaration that as a terminating partner he be permitted to provide outpatient or alternatively home health physical therapy and/or inpatient services at any location he determines, which services fall within the ambit of the *776 partnership agreement’s definition of “Rehabilitative Services.” Because he has admitted that as a BRPT partner he worked as an employee of BRPT-Lake as a physical therapist, there is no outstanding issue of material fact insofar as whether the declaration Lemoine seeks is within the scope of the nonjcompetition8 agreement.[6]
Preliminarily we note that on appeal, the parties have expended much argument over the effect of an application of the provisions of Subsection K of La. R.S. 23:921, which creates an express exception to the general rule of Subsection A insofar as the enforceability of noncompetition agreements in the context of partnerships. But it is the provisions of La. R.S. 23:921 in effect at the time the agreement was executed that are applicable in determining whether a noncompetition agreement is enforceable. Walker v. Louisiana Health Mgmt. Co., 94-1396 (La.App. 1st Cir.12/15/95), 666 So.2d 415, 426, writ denied, 96-0571 (La.4/19/96), 671 So.2d 922. And the version of the partnership agreement the parties have attached to their pleadings was that which was entered into on January 1, 2005, prior to the enactment of Subsection K by 2008 La. Acts, No. 399, § 1, effective August 15, 2008. Thus, because we are bound by the jurisprudence that we apply the version of La. R.S. 23:921 in effect on the date the non-competition provisions were executed, we turn our attention to an application of the provisions of Subsection C, which was enacted by 1990 La. Acts, No. 201, § 1, effective as of September 7, 1990, and the post-SWAT 2Jf enactment of the provisions of Subsection D by 2003 La. Acts, No. 428, § 1, effective on August 15, 2003.
Lemoine asserts the noncompetition provisions do not fall within the ambit of the exception set forth in La. R.S. 23:921C because he agreed with BRPT, the partnership, rather than BRPT-Lake, whom he describes as his actual “employer.” 1 flThus, Lemoine reasons, his consent to not engage directly or indirectly in the business of rehabilitative services was not “with his former employer.” We disagree.
As we have already pointed out, Lem-oine agreed with the partnership as a partner of BRPT to contractually define himself as “an employee of BRPT-Lake.” Thus, his agreement to devote his entire time and attention to rehabilitative services as an employee of BRPT-Lake is a partnership obligation. See La. C.C. art. 2808 (each partner owes the partnership all that he has agreed to contribute to it). In addition to engaging in rehabilitative services, BRPT was the majority interest owner of BRPT-Lake. Although the non-competition provisions were contained in the partnership agreement, in light of Lemoine’s partnership obligation as an employee of BRPT-Lake, through his consent with BRPT — the undisputed majority interest owner of BRPT-Lake — Lemoine *777 agreed with his employer to refrain from carrying on or engaging in rehabilitative services under La. R.S. 23:921C. And under the plain language of Subsection D, regardless of whether Lemoine is an owner or equity interest holder of a competing business, his employment in rehabilitative services is deemed to be carrying on or engaging in a similar business. Accordingly, the trial court correctly found that the noncompetition provisions are valid and did not abuse its discretion in denying Lemoine the requested declaratory relief.
In brief and at oral argument, Lemoine acknowledged that he has no LUTPA claim unless the non-competition agreement is unenforceable. Because we have found the non-competition provisions are enforceable, we find no error in the trial court’s actions, sustaining the peremptory exception raising the objection of no cause of action and dismissing as moot the dilatory exception objecting on the |inbasis of prematurity as to Lemoine’s LUTPA claim.[7]
DECREE
For these reasons, the trial court’s judgment, denying Lemoine’s motion for summary judgment seeking declaratory relief and granting that of BRPT and BRPT-Lake, expressly finding that the non-competition provisions of the BRPT partnership agreement entered into with Lemoine are valid; and dismissing Lemoine’s LUT-PA claim is affirmed. Appeal costs are assessed against plaintiff-appellant, Lance P. Lemoine, Jr.
AFFIRMED.

. The agreement is entitled, "FOURTH AMENDED AND RESTATED PARTNERSHIP AGREEMENT OF [BRPT].”

. It is undisputed that the operating agreement recognized BRPT was in the business of providing physical and occupational therapy and other rehabilitative services; and restricted BRPT from competition by prohibiting it from providing rehabilitation services in a delineated area other than through BRPT-Lake.

. Although Lemoine's allegations specifically averred, "Just prior to filing this pleading ... BRPT withdrew its objection to Lemoine providing at-home physical therapy” in specified parishes, his prayer requests an express declaration of his entitlement to provide, among other things, "home health physical therapy.”

. See La. R.S. 51:1401-1427.

. Subsection D was originally enacted as Subsection H but was redesignated as Subsection D, and Subsections D through G were redes-ignated as Subsections E through H, respectively, pursuant to the statutory revision authority of the Louisiana State Law Institute.

. Before the trial court and again in brief, Lemoine conceded that there were no outstanding issues of material fact but maintained that the business of BRPT was ownership of BRPT-Lake and not to provide rehabilitative services. Thus, it appears he is asserting that as a matter of contract, the only business in which BRPT engaged was ownership of BRPT-Lake. But in light of Lemoine’s allegations of having been a BRPT partner and employed by BRPT-Lake, his affidavit attesting to having provided physical therapy at BRPT-Lake at the same time he was a BRPT partner, the language of the partnership agreement permitting BRPT to engage in rehabilitative services, and the affidavits of Lemoine’s former partners attesting that partners were required to devote their entire attention to rehabilitation services as employees of BRPT-Lake and that BRPT partners were the highest compensated employees of BRPT-Lake, the record establishes as a matter of undisputed fact that BRPT’s partners engaged in the performance of rehabilitative services.

. The trial court’s judgment also purports to dismiss Lemoine’s claims, “if any,” asserted against BRPT-Lake. Although the parties raise no contentions with this portion of the trial court’s judgment we point out that the only allegations Lemoine directed at BRPT-Lake were as part of his claim for declaratory relief. Since courts may declare rights, status, and other legal relations and the declaration shall have the force and effect of a final judgment or decree, see La. C.C.P. arts. 1871, and further relief based on a declaratory judgment may be granted when necessary or proper only upon an application by petition which requires the court to direct any adverse party whose rights have been adjudicated to show cause why further relief should not be granted, see La. C.C.P. art. 1878, under the procedural posture of this case, neither the trial court nor this court has jurisdiction to dismiss any party concerning Lemoine's request for declaratory relief.