PETTIGREW, J.
|2In this appeal, plaintiffs challenge the trial court’s judgment, granting summary judgment in favor of defendants and dismissing, with prejudice, plaintiffs’ petition for preliminary and permanent injunction and declaratory relief. For the reasons that follow, we reverse in part, vacate in part, and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
The facts of this case are not in dispute. On August 29, 2012, Governor Bobby Jin-dal issued Executive Order No. BJ 2012-16 (“Executive Order”), to provide for the “LIMITED TRANSFER OF AUTHORITY TO COMMISSIONER OF INSURANCE FOR EMERGENCY RULES FOR HURRICANE ISAAC.” The Executive Order provided, in pertinent part, as follows:
WHEREAS, in accordance with R.S. 29:724,[1] the Governor may suspend the *679 provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules, or ^regulations, of any state agency, if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency;
WHEREAS, families and businesses may have suffered damages due to Hurricane Isaac and its aftermath or may have to relocate temporarily due to mandatory or voluntary evacuations and/or damage to their dwellings or offices;
WHEREAS, in addition to the displacement of citizens and disruption of business operations, Hurricane Isaac may cause interruption of communications, including phone service, internet service, and delivery.of mail in numerous areas throughout Louisiana;
WHEREAS, in the ordinary course of business, insurance companies send notices to their insureds, many of which are required by law to be responded to within specified time limits with consequences for failure to do so;
WHEREAS, State law also provides requirements for the approval and denial of claims by insurers, though compliance may not [be] practical or possible;
WHEREAS, Commissioner of Insurance James J. Donelon has advised the Governor that citizens in Louisiana are at risk with regard to any and all kinds of insurance; and
WHEREAS, Commissioner of Insurance James J. Donelon has requested that the Governor authorize him to suspend laws regarding legal deadlines and certain processes and procedures applicable to Louisiana citizens who on 12:01 A.M., August 26, 2012, resided in certain parishes, regarding any and all insurance matters, including but not limited to flood insurance, homeowners insurance, life .insurance, health and accident insurance, limited benefit insurance, vehicle insurance, liability insurance, workers’ compensation insurance, burglary and forgery insurance, glass insurance, fidelity and surety insurance, title insurance, fire and extended coverage insurance, steam boiler and sprinkler leakage insurance, crop and livestock insurance, marine and transportation insurance, credit life insurance, medical supplement insurance, credit property and casualty insurance, annuity insurance, HMOs, professional and medical malpractice liability insurance, property and casualty insurance, all surplus lines insurance, self insurance funds, disability insurance, reciprocal insurance, long term *680 care insurance, short term health insurance, stop loss insurance, excess loss insurance, commercial general insurance, Medicare supplement insurance, preferred provider organizations, managed care organizations and any and all other insurance related entities licensed by the Commissioner or doing business in Louisiana;
NOW THEREFORE I, BOBBY JIN-DAL, Governor of the State of Louisiana, by virtue of the authority vested in me by the Constitution and laws of the State of Louisiana, do hereby order and direct as follows:
SECTION 1: Commissioner of Insurance James J. Donelon shall have limited transfer of authority to act only according to the requirements for implementation of Emergency Rule 26, Title 37. The Governor’s authority pursuant to R.S. 29:724 to suspend provisions of any [4regulatory statute prescribing the procedures for conduct of State business, or the orders, rules or regulations of the Department of Insurance is transferred to Commissioner of Insurance James J. Donelon for purposes of enacting and enforcing Emergency Rule 26, Title 37.
SECTION 2: This limited transfer of authority referenced in Section 1 specifically includes but is not limited to the authority to suspend applicable statutes, issue any rules, regulations, and directives or take any other action that Commissioner James J, Donelon deems necessary for purposes of Emergency Rule No. 26 to protect the public health, safety, and welfare of the citizens of Louisiana who were affected by Hurricane Isaac and on 12:01 AM, August 26, 2012, resided in those parishes of Louisiana specified in Emergency Rule No. 26.
SECTION 3: Any rules, regulations, directives or any other actions taken by Commissioner of Insurance James J. Donelon to effectuate Emergency Rule No. 26 shall have the full force and effect as if said rules, regulations, directives or any other actions were, issued by the Governor of the State of Louisiana.
SECTION 4: The Governor of the State of Louisiana shall retain his power, coterminous with the power transferred to Commissioner of Insurance James J. Donelon, to issue any rules, regulations, directives or take any other actions with regard to any and all insurance matters necessary to protect the public health, safety and welfare of the citizens of Louisiana.
SECTION 5: This limited transfer of authority shall remain in full force and effect for the duration of Emergency Rule No. 26, which is until September 25, 2012.
[[Image here]]
Relying upon the transfer of authority from Governor Jindal, the State of Louisiana through the Department of Insurance, and James J. Donelon, in his capacity as Commissioner of the Department of Insurance (the “Commissioner”) (collectively “the Department”), promulgated Emergency Rule 26 (“Rule 26”), which in pertinent part, temporarily banned the practice of “balance billing” by out-of-network health care providers as discussed in detail below.[2] Pursuant to § 4767 of Rule 26, it *681 became effective at 12:01 a.m. on August 26, 2012, and was “in full force and effect until 12:01 a.m. ^September 25, 2012,” As originally implemented, Rule 26 did not contain any geographical limitations. Specifically, § 4701(A) provided as follows:
The benefits, entitlements and protections of Emergency Rule 26 shall be applicable to insureds who, as of 12:01 a.m. on August 26, 2012, had a policy, insurance contract or certificate of coverage for any of the types of insurance enumerated in § 4708 and reside in the state of Louisiana. Insureds shall include, but not be limited to, any and all policyholders, members, subscribers, en-rollees and certificate holders.
However, this statewide version of Rule 26 was only in place from August 26, 2012 through September 8, 2012, when Rule 26 was amended by the Commissioner. As set forth in § 4701(B), as amended, Rule 26’s applicability after September 8, 2012, was limited to insureds who resided in certain parishes and who gave written notice before September 25, 2012, to their insurers of the impact inflicted upon them as a result of Hurricane Isaac.
The majority of Rule 26 only suspended statutory and regulatory provisions concerning cancellations, non-renewals, rein-statements, premium payments, and claim filings regarding any and all insurance matters caused by Hurricane Isaac and affecting insureds in certain parishes. However, §§ 4719 and 4721, which are at issue herein, appeared to go a bit further.
The provisions of § 4719, entitled “Emergency Health Care Services,” provided as follows:
A. R.S. 22:1821 et seq., remains in effect regarding all health insurance issuers, HMOs, PPOs, MCOs, PBMs or TP As, and any other health insurance entities doing business in Louisiana or regulated by the commissioner, and any and all other health insurance regulated by the Louisiana Insurance Code. Emergency services claims snail be covered as if in-network and health care professionals and health care providers shall be reimbursed in accordance with the Patient Protection and Affordable Care Act specifically, section 2719A and 75 FR 37188 and health care professionals and health care providers shall be prohibited from balance billing the insured, policyholder, member, subscriber, enrollee and certificate holder.
Further, the provisions of § 4721, entitled “Compliance with Health Care Consumer Billing and Protection Act,” provided as follows:
A. All health care professionals and health care providers rendering services to an insured in the state of Louisiana shall comply with the Health Care Consumer Billing and Protection Act pursuant to R.S. 22:1871 et seq. Health care providers and/or health care professionals who file a | f;claim and/or accept payment for non-elective health care services and emergency health care services shall have legally released the insureds from any further financial obligation for the health care services rendered. Health care providers and/or health care professionals shall be deemed to have released, discharged and waived any and all rights to take any legal action or redress, either in person or via transfer, assignment or subrogation, to collect any unpaid amounts from insureds and/or health insurance issuers, HMOs, PPOs, MCOs, PBMs or TPAs or any or all other health insurance entities doing *682 business in Louisiana or regulated by the commissioner. Any violation by health care providers and/or health care professionals of this provision may be deemed an unfair trade practice under R.S. 22:1871 et seq. and may be referred to the Louisiana Attorney General. The Louisiana Attorney General may pursue remedies as provided for in R.S. 51:1401 et seq.
In response to Rule 26, the Louisiana Hospital Association and the Louisiana State Medical Society (collectively referred to as “LHA”) filed the instant petition for preliminary and permanent injunction and declaratory relief against the Department, challenging the constitutionality of §§ 4719 and 4721. LHA argued that the provisions of Rule 26, and specifically §§ 4719 and 4721, were unconstitutional in the following, nonexclusive respects: 1) the authority granted to Governor Jindal by La. R.S. 29:724 does not authorize the governor, or any transferee, to make substantive, affirmative law; 2) the authority granted to Governor Jindal by La. R.S. 29:724 is non-transferable and the Executive Order relied upon by the Department is without effect; 3) the provisions of §§ 4719 and 4721 exceed the authority delegated to the Commissioner by Governor Jindal; 4) the provisions of §§ 4719 and 4721 exceed the authority granted to the Commissioner by the Louisiana Constitution and/or the Louisiana legislature; 5) the promulgation of Rule 26 by the Department is in clear violation of the separation of powers provisions of the Louisiana Constitution; and 6) the referenced regulatory sections are in violation of the Louisiana Contract Clause, Article. I, § 23 of the Louisiana Constitution.
Thereafter, the Department filed a motion for summary judgment, arguing that LHA’s constitutional challenge was unfounded and the petition was ripe for summary dismissal. The motion filed by the Department was supported by the following exhibits: (1) a certified copy of Executive Order No. BJ 2012-16; (2) a certified copy of Rule 26 and a certified copy of Amended Rule 26; (3) a certified copy of Proclamation No 92 BJ 2012 |7(the declaration of a state of emergency for Tropical Storm Isaac); and (4) the affidavit of David Truax (Custodian of the official records of the Office of the State Register of the State of Louisiana), with attached certified copies of various emergency rules and previous executive orders by Governor Jin-dal and former Governor Kathleen Blanco, introduced to show that this was not the first time that a governor had delegated his authority to the Commissioner in the wake of an emergency.
LHA filed an opposition to the motion for summary judgment, alleging that the Department, “in purported response to Hurricane Isaac, [has] impermissibly usurped the exclusive law-making authority of the Louisiana legislature and [has] exceeded the authority granted by La. R.S. 29:724 by enacting the disputed provisions of Emergency Rule 26.” Arguing that the issue before the court was purely a legal one, i.e., the constitutionality of §§ 4719 and 4721 of Rule 26, LHA maintained that the matter was appropriate for declaratory relief in its favor.[3]
*683 Following a January 14, 2013 hearing on the motion for summary judgment, the trial court granted the Department’s motion, dismissing, with prejudice, LHA’s petition for preliminary and permanent injunction and declaratory relief in its entirety. In oral reasons for judgment, the trial court noted as follows:.
This court is firmly of the opinion that the governor of this state, as the chief executive officer, has the constitutional power and authority to act in cases of emergency declared through his subordinates, through his cabinet level, and it may occasion some abrogation of certain clauses in certain contracts wherein the safety, public safety, and health, and other concerns of the citizens have to be balanced against the exercise at that rate at that juncture. And the legislature has provided an orderly delegation, which is [constitutionally] permissible from the most plenary of branches to the executive or the administration. The executive acted appropriately, a thirty day period, twenty-three jurisdictions to provide within its delegation as well as the police power, a schematic design that did not forever more and henceforth impair the obligation of an existing contract. The governor, as the chief executive, may have delegated it to the commissioner of insurance. He could have also delegated it to the treasurer, might have delegated it to the— well, I won’t go that far, but he might have delegated it otherwise. But in any event, this, court is of |sthe opinion that the exercise of their powers are constitutional,] the plaintiffs [sic] have established [a] prima facie showing, and they’re entitled to summary judgment. The court grants it.
A judgment in accordance with these findings was signed by the trial court on February 20, 201S.[4] It is from this judgment that LHA has appealed, assigning the following specifications of error:
1. The trial court erred when it sanctioned the promulgation of §§ 4719 and 4721 of Emergency Rule 26 by the Department of Insurance, which is a direct violation of the separation of powers provisions of the Louisiana Constitution of 1974.
2. The trial court erred when it approved the enactment of the substantive provisions of §§ 4719 and 4721 of Emergency Rule 26 by the Department of Insurance, the enactment of which exceeds the authority granted by the Legislature pursuant to La. R.S. 29:724.
3. The trial court erred when it found that the authority to enact substantive law, as contained in §§ 4719 and 4721 of Emergency Rule 26, to be within the authority delegated to the Department of Insurance by Executive Order, No. BJ 2012-16.
4. The trial court erred in failing to find that §§ 47Í9 and 4721 of Emergency Rule 26, promulgated by the Department of Insurance, violated the provi *684 sions of Louisiana’s Contract Clause (La. Const, art. I, § 23).
DECLARATORY RELIEF
Louisiana Code of Civil Procedure article 1871 authorizes the judicial declaration of “rights, status, and other legal relations whether or not further relief is or could be claimed.” A declaratory judgment is one that simply establishes the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done, and its distinctive characteristic is that the declaration stands by itself with no executory process following as a matter of course, so that it is distinguished from a direct action in that it does not seek execution or performance from the defendant or |9the opposing litigants. Lemoine v. Baton Rouge Physical Therapy, LLP., 2013-0404, p. 4 (La.App. 1 Cir.12/27/2013), 135 So.3d 771, 773, writ denied, 2014-0201 (La.4/4/14), 135 So.3d 1182.
The trial court’s February 20, 2013 judgment provided, in pertinent part, as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants’ Motion for Summary Judgment be and hereby is GRANTED, as there are no genuine issues of material fact that preclude Final Judgment in favor of THE STATE OF LOUISIANA, THE LOUISIANA DEPARTMENT OF INSURANCE AND JAMES J. DONE-LON IN HIS CAPACITY AS COMMISSIONER OF THE LOUISIANA DEPARTMENT OF INSURANCE;
IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs’ PETITION FOR PRELIMINARY AND PERMANENT INJUNCTION AND DECLARATORY RELIEF be and hereby is DISMISSED WITH PREJUDICE in its entirety;
IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that this ruling be and hereby is deemed a FINAL JUDGMENT, as it resolves all issued in the above-captioned matter between the parties[.]
Although a liberal interpretation of what the trial court accomplished in this judgment could allow one to infer that the trial court, by virtue of granting the Department’s motion for summary judgment and dismissing, with prejudiced, LHA’s petition for declaratory relief, implicitly denied LHA’s request for a declaration that §§ 4719 and 4721 of Rule 26 were unconstitutional and therefore void and unenforceable, we find it was legal error on the part of the trial court not to specifically declare the rights of the parties in the February 20, 2013 judgment. Nevertheless, as an appellate court, we are empowered to render any judgment that is just and proper upon the record. La.Code Civ. P. art. 2164.
The character of the underlying action herein was one for declaratory judgment and permanent injunction. However, the judgment before the court on appeal was rendered pursuant to a motion for summary judgment Thus, our review is pursuant to the summary judgment standard. See Carrollton Presbyterian Church v. Presbytery of South Louisiana of Presbyterian Church (USA), 2011-0205, p. 6 (La.App. 1 Cir. 9/14/11), 77 So.3d 975, 978 writ denied, 2011-2590 (La.2/17/12), 82 So.3d 285, cert denied, — U.S. - 133 S.Ct. 150, 184 L.Ed.2d 32 (2012).
STANDARD OF REVIEW AND GENERAL PRINCIPLES OF SUMMARY JUDGMENT
Summary judgment is subject to de novo review on appeal, using the same *685 standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 2009-1202, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 339-340, writ denied, 2010-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La.Code Civ. P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769 (per curiam). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there' is a genuine issue of triable fact. Hines, 2004-0806 at 1, 876 So.2d at 765. Despite .the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050 (per curiam).
 After a thorough review of the record before us, we note that the material facts of this case are not in dispute. The real issue before us is whether the trial court, correctly interpreted and applied the law. Appellate review of questions of law is simply a review of whether the trial court was legally correct or legally incorrect. City of Baker School Bd. v. East Baton Rouge Parish School Bd., 99-2505, p. 2 (La.App. 1 Cir. 2/18/00), 754 So.2d 291, 292, On legal issues the appellate court gives no weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and .renders judgment on the record. Northwest Louisiana Production Credit Ass’n v. State, Dept. of Revenue and Taxation, 98-1995, p. 3 (La.App. 1 Cir. 11/5/99), 746 So.2d 280, 282.
LAW AND ANALYSIS
On appeal, LHA argues that the “language of La. R.S. 29:724 makes it clear that the legislature did not grant the Governor limitless power to make substantive law. Thus, the Governor had no such authority to transfer to the [Department].” Pointing to Section (D) of La. R.S. 29:724 and the enumerated powers set forth therein, LHA maintains that there is no provision in the statute that permits the governor to enact any substantive law that the governor deems appropriate. Rather, LHA alleges that when all the powers granted to the governor in Section (D) are read in para materia, it is clear that the legislature intended to give the governor the authority to quickly respond to and cope with the practical realities that can occur during any given emergency. LHA argues that balance billing is not a scenario creatéd' by ah emergency situation, but rather, a legislatively endorsed practice that applies to all insureds every day. LHA adds that “Rule 26’s revocation of out-of-network provider’s statutorily protected right to seek payment for services rendered does not enhance the ability of the State or the Governor to respond to any emergency caused by Hurricane Isaac.” Noting that the Department’s attempt to 'legislatively prevent balance billing is not necessary to “cope with an *686 emergency,” LHA asserts the Department’s exercise of authority beyond the scope of La. R.S. 29:724(D) is unauthorized and unconstitutional.
Citing La. R.S. 29:722, the Department argues in response:
Reading La. R.S. 29:724 together with La. R.S. 29:722, it is apparent that Governor Jindal was legally authorized to issue executive orders “to ensure that preparations of [the state of Louisiana would] be adequate to deal with [Hurricane Isaac],” “to ... prevent, prepare for, ... respond to, or recover from” Hurricane Isaac, and “generally to preserve the lives and property of the people of the state of Louisiana,” Governor Jindal was also legally authorized to issue executive orders “to reduce vulnerability of people and communities of [the state of Louisiana] to damage, injury, and loss of life and property resulting from” Hurricane h ¡Isaac. And he was authorized to issue executive orders “to prepare for prompt and efficient ... treatment of persons victimized or threatened by” Hurricane Isaac.
Considering the scope of the emergency powers that the legislature granted to the governor during state disasters, Governor Jindal was acting well within his authority under HSEDA to issue an executive order temporarily banning out-of-network [health care providers] from balance billing Louisiana insureds in the immediate aftermath of Hurricane Isaac.
The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. In re Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Id,.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the legislature’s intent. La. R.S. 1:4; La. Civ.Code art. 2; Conerly v. State, 97-0871, p. 3 (La.7/8/98), 714 So.2d 709, 710. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; Conerly, 97-0871 at 3, 714 So.2d at 710.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Boyter, 99-0761 at 9, 756 So.2d at 1129; Stogner, 98-3044 at 5, 739 So.2d at 766. the statute must, therefore, be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. Boyter, 99-0761 at 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. Id.; Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La.1989). It is presumed the intent of the legislature is to achieve a consistent body of law. Stogner, 98-3044 at 5, 739 So.2d at 766.
|1sIn La. R.S. 29:721 et seq., the Legislature enacted the HSEDA. The legislature enacted the HSEDA to enable the governor and parish presidents to declare a state of emergency for the stated purposes of, among other things, preserving the lives and property of the state, reducing *687 vulnerability of people and communities to damage, injury and loss of life and property resulting from a natural or man-made catastrophe, providing for the orderly start of restoration of persons and property affected by the emergency or disaster, coordinating activities relating to response and recovery among the different participatory agencies, and coordinating resources with the federal government, other states, and private agencies in order to effectively deal with the emergency or disaster. La. R.S. 29:722, 724, and 727; see State v. Pearson, 2007-332, pp. 9-19 (La.App. 5. Cir. 12/27/07), 975 So.2d 646, 652.
Reading the HSEDA as a whole, it is clear that the legislature did not intend to convey legislative authority upon the governor during a state of. emergency. As previously indicated, La. R.S. 29:724(A) permits the governor to issue executive orders, proclamations, and regulations to “effectuate the provisions of [the HSE-DA].” The specific powers granted to the governor under the HSEDA are set out in La. R.S. 29:724(D). While Section (D)(1) permits the governor to “[s]uspend the provisions of any regulatory statute prescribing the procedures for conduct of state business ... if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency,” there is no provision in La. R.S. 29:724 that permits the governor to enact substantive law, (Emphasis added.) As pointed out by LHA in brief to this court, had the legislature deemed it appropriate for the governor to enact substantive legislation, it could have easily included same in the series of items designated in La. R.S. 29:724(D). This court must apply the well-settled doctrine of statutory construction, expressio unius et exclusio alterius, which teaches us that when the legislature specifically enumerates a series of things, the legislature’s omission of other items, which could have been easily included in the statute, is deemed intentional. Sensebe v. Canal Indem. Co., 2010-0703, p. 16 (La.1/28/11), 58 So.3d 441, 451.
|14As Governor Jindal had no authority pursuant to La. R.S. 29:724 to enact substantive law,- he had no such authority to transfer to the Department. Thus, we find that by enacting §§ 4719 and 4721 of Rule 26, the Department exceeded the authority granted by the legislature pursuant to La. R.S. 29:724. Accordingly, summary judgment in favor of the Department was inappropriate.[5] Therefore, we reverse that portion of the trial court’s judgment granting summary judgment in favor of the Department. We further vacate that portion of the judgment denying the preliminary and permanent injunction and remand this matter to the trial court for further proceedings.
CONCLUSION
For the above and foregoing reasons, we reverse that portion of the trial court’s February 20, 2013 judgment granting summary .judgment in favor of the Department; and we vacate that portion of the judgment denying the preliminary and permanent injunction and remand this *688 matter for further proceedings consistent with this opinion. Appeal costs in the amount of $1,598.50 are assessed against the Department.
REVERSED IN PART; VACATED IN PART; REMANDED.
McDONALD, J., dissents and assigns reasons.
WELCH, J., dissents for reasons assigned by Judge McDONALD.
THERIOT, J., concurs for the reason assigned by Judge KUHN.
KUHN, J., concurs and assigns reasons.
HIGGINBOTHAM, J., concurs for same reasons as Judge KUHN.
PARRO, J., dissents for the reasons assigned by Judge CRAIN.
CRAIN, J., dissents and assigns reasons.
McCLENDON, J., concurs on the reasons assigned by Judge KUHN.

1. As part of the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("HSEDA”), La. R.S. 29:724 provides, in pertinent part, as follows, with respect to the powers of the governor during a state of emergency:
A. The governor is responsible for meeting the dangers to the state and people presented by emergencies or disasters, and in order to effectuate the provisions of this Chapter, the governor may issue executive orders, proclamations, and regulations and amend or rescind them. Executive orders, proclamations, and regulations so issued shall have the force and effect of law.
[[Image here]]
D. In addition to any other powers conferred upon the governor by law, he may do any or all of the following:
*679 (1) Suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules, or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency.
(2) Utilize all available resources of the state government and of each political subdivision of the state as reasonably necessary to cope with the disaster or emergency.
(3) Transfer the direction, personnel, or functions of state departments and agencies or units thereof for the purpose of performing or facilitating emergency services.
(4) Subject to any applicable requirements for Compensation, commandeer or utilize any private property if he finds this necessary to cope with the disaster or emergency.
(5) Prescribe routes, modes of transportation, and destination in connection with evacuation.
(6) Suspend or limit the sale, dispensing, or transportation of alcoholic beverages, firearms, explosives, and combustibles.
(7) Make provision for the availability and use of temporary emergency housing.

. “Balance billing'' is defined as follows:
[A]ny written or electronic communication by a non-contracted health care provider that appears to attempt to collect from an enrollee or insured any amount for covered, non-covered, and out-of-network health care services received by the enrollee or insured from the non-contracted health care provider that is not fully paid by the *681 enrollee or insured, or the health insurance issuer.
La. R.S. 22:1880(A)(1).

. We note that LHA subsequently filed its own motion for summary judgment, seeking a judgment in its favor prohibiting the Department from implementing and enforcing Rule 26 and declaring Rule 26 unconstitutional and unenforceable. However, LHA's motion was not filed until four days before the hearing on the Department’s motion for summary judgment. Accordingly, LHA’s motion was not heard by the trial court as a cross motion for summary judgment, which would be the normal course and procedure, and is not before us on review.

. On May 13, 2014, during the pendency of this appeal, the Department filed with this court a "Peremptory Exception Of Lack Of Standing Or, In The Alternative Motion To Dismiss Or Remand.” Filing a peremptory exception for the first time on appeal is permitted by La, Code Civ, P. art. 2163. However, Article 2163 makes consideration of such an exception discretionary with the appellate court. Southern States Masonry, Inc. v. J.A. Jones Const. Co., 507 So.2d 198, 207 (La.1987), Given the lateness of the filing herein, we decline to exercise our discretionary authority to consider the Department exception filed for the first time on appeal. The facts underlying the exception have existed since the inception of the litigation, but inexplicably, were not complained of until after the matter was on appeal. We find it would not be in the interest of justice or judicial efficiency to address and decide the exception at this juncture. Accordingly, we decline to do so.

. Courts should avoid constitutional rulings when a case can be decided on the basis of non-constitutional issues. UTELCOM, Inc. v. Bridges, 2010-0654, p. 12 (La.App. 1 Cir. 9/12/11), 77 So.3d 39, 50, writ denied, 2011-2632 (La.3/2/12), 83 So.3d 1046. Because we have determined that the Department exceeded its authority in enacting §§ 4719 and 4721 of Rule 26, the issues raised by LHA concerning the separation of powers provisions of the Louisiana Constitution and the Contract Clause, La. Const, art. I, § 23, are not essential to the determination of the issues before this court. Accordingly, the constitutional issues are pretermitted.